STATE EX REL. HILLIS, RESPONDENT, *v.* SULLIVAN, COUNTY TREASURER, APPELLANT.

(No. 3,396.)

(Submitted November 19, 1913.  Decided December 13, 1913.)

[137 Pac. 392.]

*Constitution—Rules of Construction—Departments of Government—Powers—District Courts—Attendants—Appointment—Sheriffs—County Commissioners.*

Constitution—Rules of Construction.
   1.   The state Constitution must be construed in the light of the history of the commonwealth, the surrounding circumstances, the subject matter under consideration, the object sought to be attained, as well as the system of laws in being at the time of its adoption and continued in force by Schedule 1 thereof.

Same—Nature of Document.
   2.   The state Constitution is not a grant, but a limitation, of power.

Same—District Courts—Attendants—Power to Appoint—Sheriffs—County Commissioners.
   3.   *Held,* that it is only after the sheriff has refused to perform the duties of court attendant, either in person or by deputy (Rev. Codes, sec. 3026), and the board of county commissioners has declined to furnish the district court with assistance sufficient for the transaction of business (sec. 6302), that a district judge may appoint his own attendant, fix his compensation and compel payment thereof out of the public funds.

Same—Departments of Government—Powers.
   4.   The provision of section 1, Article IV, state Constitution, dividing the state government into three departments, *held,* to mean that the powers properly belonging to one department shall not be exercised by either of the others, and not that there shall be an absolute independence between them.

*Appeal from District Court, Lewis and Clark County; Roy E. Ayers, Judge of the Fourth Judicial District, presiding.*

Proceedings in *mandamus* by the state, on relation of W. W. Hillis, against Stephen Sullivan, as treasurer of Lewis and Clark county. From a judgment directing the issuance of a peremptory writ and an order denying a new trial, defendant appeals. Reversed and remanded.

*Mr. A. H. McConnell* and *Mr. Joseph P. Donnelly,* submitted a brief in behalf of Appellant; *Mr. Donnelly* argued the cause orally.

*Mr. Chas. H. Cooper,* for Respondent, submitted a brief and argued the cause orally.

Citing the following authorities dealing with the extent and character of the powers granted to each of the several departments of government: *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *State ex rel. Peyton* v. *Cunningham,* 39 Mont. 197, 18 Ann. Cas. 705, 103 Pac. 497; *State ex rel. Schneider* v. *Cunningham,* 39 Mont. 165, 101 Pac. 962; *Spratt* v. *Helena P. T. Co.,* 37 Mont. 60, 94 Pac. 631.

Under the Constitution the whole judicial power of the state is vested in the courts and officers named, and the other departments of government are prohibited from assuming to exercise any part of that power. (See Story on the Constitution, secs. 1591, 1592; *Chandler* v. *Nash,* 5 Mich. 409; *Van Slyke* v. *Trempealeau County etc. Ins. Co.,* 39 Wis. 390, 20 Am. Rep. 50; *Greenough* v. *Greenough,* 11 Pa. 489, 51 Am. Dec. 567; *In re Weston,* 28 Mont. 207, 72 Pac. 512; *State ex rel. Schneider* v. *Cunningham, supra; Ex parte Towles,* 48 Tex. 413; *Kilbourn* v. *Thompson,* 103 U. S. 168, 26 L. Ed. 377; *Ex parte Reis,* 64 Cal. 243, 30 Pac. 806.)

The creation of a judicial tribunal by the Constitution vests it with plenary power to take any and all steps necessary to effectuate the purposes of its creation. (*Ex parte State,* 71 Ala. 371; *Nealis* v. *Dicks,* 72 Ind. 374; *White* v. *Hughes County,*

9 S. D. 12, 67 N. W. 855; *State ex rel. Boston & M. Co.* v. *Clancy,* 30 Mont. 193, 76 Pac. 10; *State* v. *Noble,* 118 Ind. 350, 10 Am. St. Rep. 143, 4 L. R. A. 101, 21 N. E. 244.)

The power to select their assistants and attendants rests solely in appellate and trial courts. (*State* v. *Noble, supra; People* v. *Hayne,* 83 Cal. 111, 17 Am. St. Rep. 217, 7 L. R. A. 348, 23 Pac. 1; *Ex parte City of Birmingham,* 134 Ala. 609, 59 L. R. A. 572, 33 South. 13; *State* v. *Davis,* 26 Nev. 373, 68 Pac. 689; *Dahnke* v. *People,* 168 Ill. 102, 39 L. R. A. 197, 48 N. E. 137; *In re Courtroom,* 148 Wis. 109, Ann. Cas. 1913B, 98, 134 N. W. 490; *Belvin* v. *Richmond,* 85 Va. 574, 1 L. R. A. 807, 8 S. E. 378; *In re Waugh,* 32 Wash. 50, 72 Pac. 710; *Watson* v. *Moniteau County,* 53 Mo. 133.)

"Whatever emanates from a judge as such, or proceeds from a court of justice, is judicial." (*In re Cooper,* 22 N. Y. 67; *Striker* v. *Kelly,* 2 Denio (N. Y.), 323; *State* v. *Noble, supra; Board of Commrs. etc.* v. *Northern Pac. R. R. Co.,* 10 Mont. 420, 25 Pac 1058.)

MR. JUSTICE SANNER delivered the opinion of the court.

This cause was presented to the district court upon an agreed statement of facts, and judgment was entered directing that a peremptory writ of mandate issue to the appellant, as county treasurer of Lewis and Clark county, requiring him to pay to the respondent the sum of $100 for services rendered as court attendant for the month of June, 1913. From that judgment and from an order denying him a new trial, the treasurer has appealed. The following are the material facts: The Honorable J. Miller Smith is, and since January 6, 1909, has been, one of the judges of the first judicial district of this state, presiding over department No. 2. On January 6, 1909, the respondent was appointed by Judge Smith as court attendant in said department No. 2, and ever since that time he has performed the duties required of him, devoting "all the working hours of every judicial day to the care and custody of the courtroom, the judge's chambers, and all the books, papers and other property

connected with the said court and the judge thereof." He also
acts as crier of said court, opening and adjourning court, and
"when the court is engaged in the trial of cases, with a panel
of jurors in attendance, takes care of jurors, under the usual
oath, and performs all the duties required of bailiffs and court
attendants" in the district court. For these services he was,
up to and including the month of May, 1913, paid the sum of
$100 per month, but on May 1, 1913, he received a notice from
the board of county commissioners of Lewis and Clark county
to the effect that from and after June 1, 1913, bailiffs or court
attendants would be allowed the sum of $3 per day "for those
days upon which the jury was in attendance at their respective
courts." On June 30, 1913, he made out his receipt in the sum
of $100 for salary as court attendant for the month of June,
1913, and, after indorsement of approval by the county auditor,
presented the same to the board of county commissioners; but
the board declined to allow or authorize payment of such sum
for the reason that under its above-mentioned order there was
not due to the relator to exceed $24 for the eight days of June
upon which a jury was present in department No. 2. There-
upon the relator cast his demand into the form of a verified claim,
in which he recited that his services had been rendered "at the
special instance and request of the judge presiding," presented
the same to Judge Smith who, on July 3, 1913, indorsed it as
follows: "It is hereby certified that the foregoing claim and
account is correct, and a proper charge against the county
treasury of Lewis and Clark county, and must be paid out of
the general fund thereof; and the treasurer of Lewis and Clark
county is hereby authorized and directed to pay the same." A
similar order was on the same day entered on the minutes of the
court, preceded by the following recitals: "The board of county
commissioners of Lewis and Clark county not having provided
a court attendant for department No. 2 of this court, and a court
attendant being necessary in said department of this court for the
proper and expeditious transaction of the business of this court,
and the judge of department No. 2 of this court having hereto-

fore requested and appointed W. W. Hillis to act as court attendant of department No. 2 of this court, and the said W. W. Hillis having presented his claim and account for services, * * * it is hereby certified,'' *etc.* Notwithstanding the above indorsement and order, the county treasurer refused and still refuses to pay the respondent's claim. In the agreed statement of facts there appears this further recital: ''That immediately upon the qualification of the sheriff of Lewis and Clark county, Montana, he offered to perform the duties of court bailiff as required of him under the statute, and has ever since been willing, and is now willing, to perform such duties specified in the statute; but the court objected, as the relator herein had been and is now performing such services.''

Briefly stated, the position of the appellant is that by the statute it is made the duty of the sheriff to attend upon the district court, act as crier thereof, call the parties, witnesses, and all other persons bound to appear, and make proclamation of the opening and adjournment of court, and of any other matter under its direction (Rev. Codes, secs. 3010, 3026); that by the statute the board of county commissioners is charged primarily with the care of the property and the disbursement of the funds of the county, and upon them, in the first instance, is imposed the duty of furnishing suitable rooms, attendants, *etc.*, for the district court (Rev. Codes, secs. 2894, 6302); that if the board shall fail to furnish suitable rooms, attendants, *etc.*, the court may direct the sheriff to procure them, and, when so procured, the expense thereof, certified by the judge, is a proper charge upon the county (Rev. Codes, sec. 6302); and that if the court has any power to appoint an attendant to perform the service required of the respondent, to fix his compensation, and make it a county charge payable without the assent of the board, such power can only be exercised upon and during necessity, and after the failure or refusal of the sheriff to perform such service, or that of the board to furnish the same.

On behalf of respondent we are favored with an elaborate and able brief, devoted to the demonstration of the following propo-

sitions: That by the Constitution of this state the powers of government are divided into three distinct departments: The legislative, the executive and the judicial; that no person or collection of persons charged with the exercise of powers properly belonging to one of these departments can lawfully exercise any powers properly belonging to either of the others, save as expressly authorized by the Constitution; that the whole judicial power of the state is vested by the Constitution in the judicial department, of which the district court is an integral part; that the district court is a court of record and, as the one court of general original jurisdiction in this state, is vested with all the powers necessarily incident to the full and free exercise of all its functions, save as limited by the Constitution; that included in these powers is the right to appoint its own attendants whenever necessary, and to itself determine the necessity in every case; that included in the right to appoint is the right and power to fix their compensation. As a conclusion from these postulates, it is contended that the district judge was authorized to appoint the respondent, to impose upon him the duties which he has performed, to fix his compensation, and to make it a liquidated charge upon the county, without regard to the neglect or default of either the board or the sheriff in the premises. We should be loath indeed to question any of the above propositions; but we think that, properly understood, they make for a conclusion quite different from that for which the respondent contends.

"It is an elementary rule," said this court in *State ex rel. McGowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94, "that [1] Constitutions are to be construed in the light of previous history and the surrounding circumstances." The framers of our Constitution spoke in general terms, and their intention is to be ascertained not merely from the language used, but "in the light of our history, the surrounding circumstances, the subject matter under consideration, and the object sought to be attained." (*Northern Pac. Ry. Co.* v. *Mjelde, ante,* p. 287, 137 Pac. 386.) Our Constitution uses many terms that it does not

define, provides for many offices the duties of which it does not prescribe. "In judging what it means, we are to keep in mind that it is not the beginning of law for the state, but that it assumes the existence of a well-understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes." (Cooley's Const. Limitations, 7th ed., p. 94; Constitution of Montana, Schedule 1; *Wastl* v. *Montana Union Ry. Co.,* 24 Mont. 159, 61 Pac. 9.)

When the Constitution was adopted, "the previous history" of this community, "the well-understood system" then in use, included a political organization of more than twenty years' standing, which was republican in form, constitutional in character, and broadly resembled in all but complete autonomy the scheme of government with which we are familiar. Then, as now, the common law was "the law and rule of decision," save as affected by legislation. There was also an extensive body of statute law, all of which was continued in force except where inconsistent with the Constitution. (Schedule, sec. 1.) And there were such instrumentalities of government as district courts, sheriffs and county commissioners. These instrumentalities were continued by the Constitution—the district court with an expression of its general jurisdiction only, the sheriff and county commissioners without any definition whatever. The [2] Constitution is not a grant, but a limitation, of power (*Northern Pac. Ry. Co.* v. *Mjelde, supra; In re Beck's Estate,* 44 Mont. 561, 121 Pac. 784, 1057), and it is manifest from its text that as to all unexpressed duties and powers—whether of the district court, the sheriff, or the county commissioners—the convention that framed and the people who adopted it had in view these offices, as they were commonly known, as possessing the attributes and authority which had theretofore been declared by the written and the unwritten law, and which "were shadowed forth and symbolized by their names." (*French* v. *State,* 52 Miss. 759; *King* v. *Hunter,* 65 N. C. 603, 609, 6 Am. Rep. 754;

*Warner* v. *People,* 2 Denio (N. Y.), 272, 43 Am. Dec. 740; *State ex rel. Kennedy* v. *Brunst,* 26 Wis. 412, 7 Am. Rep. 84.)

Under the Organic Act, the district court was a tribunal of grave dignity; in it and the supreme court of the territory were vested all the jurisdiction formerly possessed by the superior common-law courts of England (*Territory* v. *Flowers,* 2 Mont. 531), together with that of chancery (*Zimmerman* v. *Zimmerman,* 7 Mont. 114, 14 Pac. 665) ; and doubtless it was clothed with all the power and authority necessary to render its jurisdiction effective. It is by no means clear, however, that the superior common-law courts of England were wont to assert or claim the right *in limine* to select, and fix the compensation of their own attendants, without reference to other agencies of government. Certainly this was not the case when the judges of these courts were holding the assizes, for we read that of old it was incumbent upon the sheriff ''to meet the judges on their progress through their circuits, usually upon the borders of the county, escort them to the assize town with much display and antique ceremonial, procure for them suitable quarters, attend them with his undersheriff and a sufficient corps of deputies and bailiffs during their settings, and at the close of the term speed the parting guests with the like demonstrations of respect with which they were welcomed.'' (Murfree on Sheriffs, sec. 425.) This, doubtless with some abatement of the fanfare, it is still his duty in England to do (25 Halsbury Laws of England, p. 805, sec. 1391) ; but these attendants were always servants of the sheriff, and for their conduct and compensation he was answerable. (1 Blackstone, pp. 339, 347.) In general, the common-law relations of the courts to the sheriff have been preserved in the United States. In the absence of statute to the contrary, the office of sheriff imports, and always has imported, that he is the executive arm of the district court, that it is both his duty and his privilege to attend upon its sessions, either in person or by deputy, to act as the crier of the court, to execute the lawful orders of the court, and to furnish the court, when no other provision has been made, such apartments, appliances and

attendants as the court may require for the transaction of its business. (Murfree on Sheriffs, Chap. 10; *In re Court Officers*, 3 Pa. Dist. R. 196; *Mercer County Commrs.* v. *Patterson*, 2 Rawle (Pa.), 106.)

An examination of the various statutes of the territory which are pertinent to this controversy unmistakably evinces that such was the relation of the district court to the sheriff for the entire period from the Organic Act to the Constitution. "The sheriff, in person or by his undersheriff or deputy, shall  *  *  * attend upon the several courts of record in his county." (Bannack Statutes, p. 511, sec. 7; Codified Statutes 1872, p. 445, sec. 58; Rev. Stats. 1879, p. 492, sec. 404; Comp. Stats. 1887, Gen. Laws, sec. 855.)  "If a room for holding the court be not provided by the county, together with attendants, *etc.*, suitable and sufficient for the transaction of business, the court may direct the sheriff to provide such room, attendants, *etc.*, and the expense shall be a county charge." (Bannack Statutes, p. 137, sec. 476; Codified Statutes 1872, p. 161, sec. 623; Rev. Stats. 1879, p. 168, sec. 683; Comp. Stats. 1887, p. 243, sec. 703.)

So, too, the functions of the county commissioners were well known when our Constitution was adopted. Then and during the whole territorial *regime* the county commissioners were three in number in each county; they constituted a board; as a board they represented the county, were the custodians of its property, and the managers of its business and concerns; they were charged with the exercise of its powers, including the making of contracts and the incurring of expense. It was their special duty to examine, settle and allow all accounts chargeable against the county, and they were the only agency through which the county could perform the duties imposed upon it. (Bannack Statutes, pp. 499–501; Codified Statutes 1872, pp. 434, 435; Rev. Stats. 1879, pp. 479–481; Comp. Stats. 1887, pp. 842–844.)

With these relations, then, the district courts, the sheriffs, and the county commissioners passed from territorial to constitutional agencies of government; the district courts having no more power to secure attendants than they had to secure rooms.

Could the district judge have hired a courtroom at the expense of the county without regard to whether suitable provision had [3] already been made? The Code provisions now in force and relied on by appellant (secs. 2894, 3010, 3026, 6302, Rev. Codes) merely declare relations which have always existed. These statutes cannot be effectively assailed as invasions of the inherent power of the court, because the power of the court, as organized by the Constitution, did not include the right to appoint attendants without prior recourse to the sheriff and to the county. The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. When we say that it is primarily the duty and right of the sheriff, either in person or by deputy, to perform all the duties for which an attendant upon the district court may be had ·at public expense, that if additional attendants are required the county through its board of commissioners shall furnish them, that if the county fail in that regard the court may procure them through the sheriff, we express the normal situation, the orderly method which must be observed so long as it is adequate in results. When, however, these methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power. (*Los Angeles* v. *Superior Court,* 93 Cal. 380, 28 Pac. 1062; *County of San Joaquin* v. *Budd,* 96 Cal. 47, 30 Pac. 967.)

· Neither, in our opinion, is it necessary for the preservation of judicial independence that the district court should have the power to appoint its own attendants, fix their compensation, and compel payment out of the public funds, without recourse to the sheriff, who is paid for that service, or to the county commissioners, who are charged with the supervision of county expenditures. The court is entitled to trustworthy and competent attendants as needed; it is not obliged to accept any other; it may procure such service if the sheriff does not, or the board

will not, supply it. How, then, can its independence be en-
dangered when the remedy is in its own hands? The most im-
portant of all its ministerial officers is the clerk, with whose
selection it has nothing to do; if a vacancy occurs in that office
it is filled by appointment, not of the judge, but of the county
[4] commissioners. The separation of the government into
three great departments does not mean that there shall be "no
common link of connection or dependence, the one upon the other
in the slightest degree" (1 Story's Commentaries on the Con-
stitution, sec. 525); it means that the powers properly belonging
to one department shall not be exercised by either of the others
(Constitution, Art. IV, sec. 1). There is no such thing as abso-
lute independence. The governor may recommend or veto legis-
lation, and he may fill vacancies occurring on the bench of this
court or of the district court. The legislature may increase
the number of judges in any district, it may prescribe, as it
has prescribed, the entire scheme of pleading and practice by
which rights are asserted and wrongs redressed in the courts,
and it may impose additional duties upon certain executive offi-
cers. The judiciary may set aside Acts of the legislature that
are clearly unconstitutional, and it may coerce the executive
into the performance of ministerial duties. The protection of
the judicial department from encroachment is not to be sought
in extravagant pretensions to power, but rather in a firm main-
tenance of its own clear authority coupled with "a frank and
cheerful concession of the rights of the co-ordinate departments."
(*People ex rel. Smith* v. *Judge*, 17 Cal. 548.)

But it is insisted that under the decision of this court in *State
ex rel. Schneider* v. *Cunningham*, 39 Mont. 165, 101 Pac. 962,
this appeal must be determined in favor of the respondent. Mr.
Schneider was the appointee of this court to an office, that of
stenographer, which had not been formally created by legislative
Act but had arisen out of the necessities of this court; the legis-
lature had from session to session, however, made appropriations
to pay for the services rendered therein; the question presented
was whether, after the legislature had made an appropriation

of $200 per month in that behalf, the state board of examiners were vested with the authority to say that the appointee of this court was not entitled to the compensation thus provided.    The right claimed by the board of examiners was absolute and unconditional; but we held that the power vested by the Constitution in that board "to examine all claims against the state, except salaries or compensation of officers fixed by law," did not authorize it to deny to the stenographer of this court the compensation for which the legislature had provided; nor was it authorized by section 262, Revised Codes, to grant this court permission to employ a stenographer, since that implied the right to withhold such permission and thus disable the court or seriously hamper it in the discharge of its duties.    We said: "The legislature, recognizing the fact that the court has the power by which it may supply its own necessities, enacted section 6248 of the Revised Codes.    *    *    *    In case no provision had been made for a stenographer, there would have been furnished by this section a mode by which one could have been secured, as well as the power to fix and order his compensation paid.    This provision indicates recognition on the part of the legislature of the necessity that this court should be free from any control in the selection of its assistants in case the legislature should itself have failed to make suitable provision for them."    There is nothing in the *Schneider Case* to conclude us upon any of the questions now presented, for the power of the district court to appoint its own assistants in any event is not assailed.    It is the exercise of that power without the necessity therefor appearing. The relator at bar was appointed by the district court to render a service which by statute and by the common law it was the right and duty of the sheriff to render, or of the county to supply.    He was appointed *ex gratia,* without recourse to the mode prescribed by law and without anything to indicate that such recourse would be unavailing.    He has been kept, not out of the necessities of the court, so far as the record discloses, but in spite of the sheriff's offer to render all the attendance for which public moneys may be paid.    His compensation has been

fixed by the district judge without reference to legislation, and has been ordered paid out of funds for the expenditure of which the board of county commissioners is primarily responsible. To state the instant case is to state its necessary conclusion, *viz.*, that the service of the respondent covered by his claim was without authoritative warrant. Therefore, his claim, though audited by the judge, is not a liquidated charge against the county, and therefore the appellant cannot be compelled to pay it.

The judgment below is reversed and the cause remanded, with directions to dismiss the proceeding.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.