241 N.W.2d 781 (1976)
In Re The Matter of the CLERK OF COURT'S COMPENSATION FOR LYON COUNTY, Minnesota,
v.
LYON COUNTY COMMISSIONERS, Appellants.
No. 45514.
Supreme Court of Minnesota.
April 16, 1976.
*782 Patrick J. Leary, County Atty., Marshall, for appellants.
Robert E. Schmidt, Judge of District Court, Rochester, seeking affirmance for Judges of 3rd Judicial District.
William J. Nierengarten, Austin, seeking affirmance for Minn. Assn. for Court Administration.
Heard and decided by the court en banc.
KELLY, Justice.
The members of the Lyon County Board of Commissioners appeal from an order of the judges of the Fifth Judicial District purporting to set the minimum annual salary of the clerk of the District Court of Lyon County at $16,700.[1] We reverse.
The commissioners' dispute with the district judges raises an important issue of first impression in this state: Does the district court have the authority to set the minimum salary of the clerk of district court? Although the issue is a narrow one and of little apparent public significance, it contains within its compass the operation of the separation of powers within our state government. Our discussion of the issue begins with an examination of our Minnesota Constitution, which at the time of the order provided in art. 6, § 4:
"There shall be in each county one clerk of the district court, whose qualifications and duties shall be prescribed by law, and who shall serve at the pleasure of a majority of the judges of district court in each district. His compensation *783 shall be provided by law."[2] (Italics supplied.)
Despite some early cases to the contrary,[3] it is now settled that "by law" in the above-quoted section means by legislative enactment. See, State ex rel. Hennepin County Bar Assn. v. Amdahl, 264 Minn. 350, 353, 119 N.W.2d 169, 171 (1962).[4] It is beyond dispute that this was the intention of the framers of the judiciary article. Judicial Committee, Minn.Const.Comm., Preliminary Report on Revision of the Judiciary Article of the Minnesota State Constitution, 32 Minn.L.Rev. 458; Pirsig, The Proposed Amendment of the Judiciary Article of the Minnesota Constitution, 40 Minn.L.Rev. 815.
Pursuant to the above-quoted section, the legislature acted to provide for the clerk's salary in Minn.St. c. 485.[5] Minn.St. 485.018, subd. 1, establishes minimum annual salaries for clerks in counties of less than 75,000 population. For Lyon County (population 20,000 to 30,000), the minimum salary figure is $7,000. The county board of each county must set the clerk's salary annually by resolution according to § 485.018, subd. 2. If the clerk is dissatisfied with his salary as set by the board, he may appeal to the district court on the grounds that the board acted in an "arbitrary, capricious, oppressive or unreasonable manner or without sufficiently taking into account the [extent of the] responsibilities and duties of the office of the clerk * * *." § 485.018, subd. 7. Under an identical appeal statute governing salaries of sheriffs and their deputies, this court has held that the district court has broad discretion to adjust disputed salaries on appeal. In re Petition of Zillgitt v. Goodhue County Board, 295 Minn. 9, 202 N.W.2d 378 (1972); Cahill v. Beltrami County, 224 Minn. 564, 29 N.W.2d 444 (1947).
The judges of the fifth judicial district did not conform to the procedure set forth above, but chose to set the clerk's salary directly by order. Unless their action was authorized by some other statutory or constitutional source of power, it must be reversed. Two potential sources of power must be considered: (1) The district court's statutory authority to fix the clerk's salary on appeal; (2) the district court's inherent authority to provide for the salaries of its employees.
Amicus curiae Minnesota Association for Court Administration (whose brief has been adopted by the respondent district judges)[6] argues that since the district court has the statutory authority to set its clerk's salary on appeal, it may therefore do so directly by order. This is a non sequitur. Under Minn.Const. art. 6, § 4, the legislature is vested with the authority to set the *784 clerk's salary. If it can set that salary absolutely, certainly it can prescribe the procedure by which that salary is set and mandate that the procedure be followed. State v. Town of Lake, 28 Minn. 362, 364, 10 N.W. 17 (1881).
The more serious question, as advanced by both amici curiae,[7] is whether the inherent power of the district court may serve as a basis for the order entered herein. We must consider this question in greater depth.
While the use of inherent judicial power to set the salary of a court employee would be new to Minnesota, the concept of inherent judicial power is not. This court described inherent judicial power in the following terms in In re Disbarment of Greathouse, 189 Minn. 51, 55, 248 N.W. 735, 737 (1933):
"The judicial power of this court has its origin in the constitution, but when the court came into existence, it came with inherent powers. Such power is the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not. This same power authorizes the making of rules of practice."
Inherent judicial power governs that which is essential to the existence, dignity, and function of a court because it is a court. In re Integration of Nebraska State Bar Assn., 133 Neb. 283, 288, 275 N.W. 265, 267, 114 A.L.R. 151, 154 (1937). Its source is the constitutional doctrine of separation of powers as expressed and implied in our constitution. See, Minn.Const. art. 3, § 1;[8] art. 6, § 1.[9] Its scope is the practical necessity of ensuring the free and full exercise of the court's vital functionthe disposition of individual cases to deliver remedies for wrongs and "justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws." Minn.Const. art. 1, § 8; Galloway v. Truesdell, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967).
At bottom, inherent judicial power is grounded in judicial self-preservation. Obviously, the legislature could seriously hamper the court's power to hear and decide cases or even effectively abolish the court itself through its exercise of financial and regulatory authority. If the court has no means of protecting itself from unreasonable and intrusive assertions of such authority, the separation of powers becomes a myth. Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 55, 274 A.2d 193, 199, certiorari denied, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971). The recognition of these truisms has made the doctrine of inherent judicial power established law in virtually every American jurisdiction.[10] However, as with many legal doctrines, to uphold the existence of inherent judicial power in the extreme case does little to guide us in applying it to the numerous and varied financial and regulatory pressures imposed upon the courts.[11]
*785 The focus in the instant case is upon a particularly important and sensitive aspect of inherent judicial powerthe power to compel the payment of public funds for judicial purposes. While many cases have recognized that power in various contexts,[12] two are particularly significant: O'Coin's, Inc. v. Treasurer of County of Worchester, 362 Mass. 507, 287 N.E.2d 608 (1972); Commonwealth ex rel. Carroll v. Tate, supra.
In O'Coin's, the petitioner, a retail appliance store, sought a writ of mandamus directing the county treasurer to pay $86 for a tape recorder and tapes it had sold to a trial judge for use in recording criminal trials. The judge had certified that the tape recorder was necessary to prevent closing of the criminal court because no reporter was available to record the proceedings. The Supreme Judicial Court of Massachusetts issued the writ, holding:
"* * * [A]mong the inherent powers possessed by every judge is the power to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel. To correct such an impairment, a judge may, even in the absence of a clearly applicable statute, obtain the required goods or services by appropriate means, including arranging himself for their purchase and ordering the responsible executive official to make payment." 362 Mass. 510, 287 N.E.2d 612.
The court in O'Coin's was careful to point out, however, that the exercise of inherent judicial power is a duty that must be borne responsibly and that members of the judicial branch should proceed cautiously and with due consideration for the powers and prerogatives of the other branches of government. 362 Mass 515, 287 N.E.2d 615.[13] In this fashion, the Massachusetts court was able to enunciate a credible inherent-power doctrineone that recognizes at once compelling judicial resource needs and the traditional legislative budgetary prerogatives. Connors, Inherent Power of the CourtsManagement Tool or Rhetorical Weapon?, 1 Justice System Journal 63.
In Commonwealth ex rel. Carroll v. Tate, supra, the Pennsylvania Supreme Court in an expansive application of inherent power, awarded a lower court a $1,365,555 addition to its judicial budget in areas ranging from adult probation to courtroom personnel and law clerks. The court stated that the burden of proving that requested funds were "reasonably necessary for `the efficient administration of justice,'" which it placed upon the lower court, had been met and that the city's proposed budget was inadequate to meet the reasonable needs of the court. 442 Pa. 55, 274 A.2d 199.[14]
*786 In the specific area of court employees, some courts have asserted authority to control appointment, duties, and salary of employees. See, e. g., McAfee v. State ex rel. Stodola, 258 Ind. 677, 284 N.E.2d 778 (1972); Noble County Council v. State, 234 Ind. 172, 125 N.E.2d 709 (1955); In re Janitor of Supreme Court, 35 Wis. 410 (1874); Carrigan, Inherent Powers of the Courts, pp. 13 to 18; Annotation, 59 A.L.R.3d 569, 590, 605. Cf. State ex rel. Douglas v. Westfall, 85 Minn. 437, 446, 89 N.W. 175, 178 (1902). Clearly, attempts by the executive or legislative branches of government to control the functioning of court employees made under some circumstances become a serious intrusion into the court's domain. However, in the area of salaries, the traditional legislative powers of appropriation and control of spending should cause the judiciary to proceed cautiously, observing statutory procedures. State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 P. 392 (1913); Stevenson v. Milwaukee County, 140 Wis. 14, 121 N.W. 654 (1909); Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577 (1949).
From our reading and review of the above cases and other commentaries on the subject of inherent judicial power,[15] we have derived the following principles to govern our decisions in this and future cases:
(1) Inherent judicial power grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government. It comprehends all authority necessary to preserve and improve the fundamental judicial function of deciding cases.
(2) Inherent judicial power is available to courts on all levels to be used consistent with respective jurisdictions and functions. Of course, review of an exercise of such inherent power by district courts and other inferior courts is available in this court in accordance with established procedures.
(3) Inherent judicial power may not be asserted unless constitutional provisions are followed and established and reasonable legislative-administrative procedures are first exhausted. Intragovernmental cooperation remains the best means of resolving financial difficulties in the face of scarce societal resources and differences of opinion regarding judicial procedures.
(4) When established and reasonable procedures have failed, an inferior court may assert its inherent judicial power by an independent judicial proceeding brought by the judges of such court or other parties aggrieved. Such a proceeding must include a full hearing on the merits in an adversary context before an impartial and disinterested district court.[16] That court shall make findings of fact and conclusions of law in accordance with the standards set forth in this opinion and may grant appropriate relief.
(5) The test to be applied in these cases is whether the relief requested by the court or aggrieved party is necessary to the performance of the judicial function as contemplated in our state constitution. The test is not relative needs or judicial wants, but practical necessity in performing the judicial function.[17] The test must be applied with due consideration for equally important executive and legislative functions.
*787 We think the above procedures may avoid any excesses and secure for the judicial branch an inherent power measured by its proper function. It must be recognized that the judicial function, as well as the legislative and executive functions, is important to all of our citizens. In view of the increasing complexity of modern life and its attendant legal problems, it is now more important than ever that the courts be open and fully prepared to deal completely and fairly with every cause. Because of the necessity of dignity and restraint in performing the judicial function, courts cannot lobby for their interests and attempt to sway public opinion in their favor as the other branches of government and different groups in society are free to do. The courts must confine themselves to their historical and constitutional function of deciding cases. It is in the context of this function that inherent judicial power is necessary and it is in the context of this function that it must be exercised.
Applying these principles and concepts to the instant case, we hold that the action of the district court judges in setting the clerk's salary was not a proper exercise of inherent power. Inherent judicial power, which is based on the separation of powers and implied constitutional authority, cannot be exercised in the face of the express constitutional provision in Minn. Const. art. 6, § 4, that the clerk's salary be controlled by the legislature. Even Minn. Const. art. 3, § 1, which provides the express basis for our separation of powers contains the proviso "except in the instances expressly provided in this constitution."[18]
Furthermore, even if the constitution did not so expressly confer the power, the legislature has provided a reasonable procedure whereby the clerk may appeal to the district court from the resolution of the county board establishing the salary and, after hearing, that court may adjust the salary. While this procedure may not allow a full disclosure of salary when a clerk is being recruited, the previous year's salary as set by the commissioners is a guide, and a clerk may further assert his right to appeal as provided by the statute. In any event, this practical difficulty does not render the procedure so unreasonable that it may be disregarded, particularly when the legislature has the constitutional power to set the salary absolutely.
Since we have decided that the use of inherent judicial power is not appropriate in the instant case in the face of a specific constitutional provision and the failure to follow reasonable procedures implementing that provision, we do not need to determine if "practical necessity" was present. If we had reached that issue, we would not have an adequate record for review purposes because of the posture of the appeal. We have before us no evidence of the duties of the clerk, the relationship of the duties to the judicial function in Lyon County, the salary required to attract a suitable clerk, or even the difference between the county commissioners' proposed salary and that ordered by the court. We cannot ascertain the relationship between a $16,700 minimum clerk's salary and the exercise of the inherent power of the district court in a vacuum.
For the reasons expressed above, the order of the district court must be reversed. The clerk in the instant case remains free to pursue her statutory remedy for a salary increase. The further problems posed by amici curiae may be dealt with on their individual merits in accordance with this opinion.
Reversed.
NOTES
[1] The order in question was dated October 14, 1974, and served on the Lyon County auditor on October 21, 1974. The commissioners do not challenge that part of the order appointing one Beatrice V. Rubertus clerk of District and County Court in Lyon County, but attack only the following portion: "IT IS FURTHER ORDERED, that the compensation of said Beatrice V. Rubertus shall be not less than $16,700 per year."
[2] This section is set forth here as amended November 7, 1972, and as it read at the time of the order of the district court. Prior and subsequent versions of the section have provided that the clerk's compensation be fixed by law. The current version of the section, found in the constitution adopted November 5, 1974, provides: "There shall be in each county one clerk of the district court whose qualifications, duties and compensation shall be prescribed by law. He shall serve at the pleasure of a majority of the judges of the district court in each district." Minn.Const. art. 6, § 13.

All references to the constitution in this opinion will be to the constitution prior to November 5, 1974.
[3] Walter v. Greenwood, 29 Minn. 87, 89, 12 N.W. 145 (1882) (upholding clerk's issuance of writ of alias execution in the absence of a statutory authorization): "* * * When the constitution declares that the duties of clerks of district courts `shall be prescribed by law,' it does not use the word `law' * * * as synonymous with `statute,' but in a broader sense, as including both statutory and common law." See, also, Fitzpatrick v. Simonson Bros. Mfg. Co., 86 Minn. 140, 148, 90 N.W. 378, 381 (1902). To the contrary, see State v. Town of Lake, 28 Minn. 362, 10 N.W. 17 (1881).
[4] See, also, State ex rel. Goodwin v. Flahaven, 289 Minn. 149, 152, 182 N.W.2d 182, 184 (1971); In re Daly, 284 Minn. 567, 568, 171 N.W.2d 818, 821 (1969).
[5] L.1965, c. 822.
[6] The judges of the fifth judicial district have not appeared or filed a brief in this court. In a letter to the Chief Justice of the supreme court, Chief Judge L. J. Irvine expressed the intention of the judges to adopt the brief of amicus curiae Minnesota Association for Court Administration. An additional amicus curiae brief has been submitted in this case by the judges of the third judicial district.
[7] See footnote 6, supra.
[8] Minn.Const. art. 3, § 1, provides: "The powers of government shall be divided into three distinct departmentslegislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution."
[9] Minn.Const. art. 6, § 1, provides: "The judicial power of the state is vested in a supreme court, a district court, and such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish."
[10] Carrigan, Inherent Powers of the Courts (published by National College of the State Judiciary) and cases cited; Annotations, 114 A.L.R. 161, 59 A.L.R.3d 569, and cases cited.
[11] The doctrine of inherent judicial power has been applied in many contexts in other jurisdictions, see sources cited in footnote 10, supra. In Minnesota, inherent power has been generally used to maintain this court's control over the bar and the practice of law. Sharood v. Hatfield, 296 Minn. 416, 210 N.W.2d 275 (1963) (disposition of bar fees); In re Petition for Integration of the Bar of Minnesota, 216 Minn. 195, 12 N.W.2d 515 (1943); Cowern v. Nelson, 207 Minn. 642, 290 N.W. 795 (1940) (statute regulating general practice of law); In re Disbarment of Tracy, 197 Minn. 35, 266 N.W. 88, 267 N.W. 142 (1936) (statutes regulating disbarment). See, also, Note, 58 Minn.L.Rev. 903 (amendment to Rule 49, Minnesota Rules of Civil Procedure).
[12] Carrigan, Inherent Powers of the Courts, pp. 13 to 21; Annotation, 59 A.L.R.3d 569.
[13] See, also State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 P. 392 (1913) (inherent power to be used only when established methods fail).
[14] The court's decision in Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 274 A.2d 193, certiorari denied, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971), however, has not passed without criticism. Comment, 120 U. of Pa.L. Rev. 1187. The commentator there stated: "Assertion by the courts of power to determine budgetary priorities and to define their own functions may radically alter the current constitutional balance of responsibilities between branches. The allocation of government functions is an ongoing development of the constitution, in a political sense. With the reallocation of functions comes, commonly, a change in policy for the conduct of the function involved. It would seem an elementary proposition in a representative government that the people retain control over such policymaking, as over the determination of societal priorities, through the legislature." 120 U. of Pa.L.Rev. 1199.

A few other courts have applied the "all funds reasonably necessary" test or a substantial equivalent. Carlson v. State, 247 Ind. 631, 220 N.E.2d 532 (1966); Smith v. Miller, 153 Colo. 35, 384 P.2d 738 (1963); State ex rel. Judges for Twenty-Second Judicial Circuit v. St. Louis, 494 S.W.2d 39 (Mo.1973); State ex rel. Anderson v. St. Louis County, 421 S.W.2d 249 (Mo.1967). Other courts have phrased the test in terms of removal of obstructions or impediments which hamper the judicial function. Annotation, 59 A.L.R.3d 569, 584.
[15] Note, 58 Marquette L.Rev. 133; Note, 57 Cornell L.Rev. 975; Brennan, Judicial Fiscal Independence, 23 U. of Fla.L.Rev. 277.
[16] This court will, if necessary, provide a judge from outside the judicial district. Attention is called to Busse v. Board of County Commissioners, Minn., 241 N.W.2d 794 (1976), filed herewith, in which appropriate procedures were used.
[17] See, State ex rel. Finley v. Pfeiffer, 163 Ohio St. 149, 126 N.E.2d 57 (1955) (necessity is question of fact); In re Courtroom and Officers of Circuit Court, 148 Wis. 109, 134 N.W. 490 (1912); State ex rel. Kitzmeyer v. Davis, 26 Nev. 373, 68 P. 689 (1902). See, also, Wayne Circuit Judges v. Wayne County, 386 Mich. 1, 190 N.W.2d 228 (1971), certiorari denied, 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1972), which on rehearing adopted the opinions of Black and Dethmers, JJ., in Wayne Circuit Judges v. Wayne County, 383 Mich. 10, 33, 172 N.W.2d 436, 445 (1969).
[18] We have found no case in which a court has exercised inherent power in the face of a constitutional provision like Minn.Const. art. 6, § 4, specifically allocating power to the legislature. The closest case is Glancey v. Casey, 447 Pa. 77, 288 A.2d 812 (1972), in which the Pennsylvania Supreme Court distinguished its decision in Commonwealth ex rel. Carroll v. Tate, supra, footnote 14, and held that mandamus would not lie to compel payment of an increased judicial salary. The Pennsylvania Constitution mandated that judicial salaries were to be "provided by law." The court stated that it would not use inherent power since the salary was adequate.