STATE of Minnesota by Nina ARCHA-
BAL, Director of Minnesota Historical
Society and State Historic Preservation
Office, Respondent,

v.

The COUNTY OF HENNEPIN, De-
fendant and Third-Party Plain-
tiff, Petitioner, Appellant,

v.

COWLES MEDIA CORPORATION,
et al., Intervenors, Respondents.

STAR TRIBUNE, A DIVISION OF
COWLES MEDIA CORPORATION,
Respondent,

v.

CITY OF MINNEAPOLIS, Third–Party
Defendant, Petitioner, Appellant.

No. C6–92–932.

Supreme Court of Minnesota.

Aug. 20, 1993.

Michael O. Freeman, Hennepin County Atty., Mark V. Chapin, Asst. County Atty., Minneapolis, for Hennepin County.

Robert J. Alfton, Minneapolis City Atty., James A. Moore, Asst. City Atty., Minneapolis, for Minneapolis.

Patricia H. Longstaff, Minneapolis, for Star Tribune.

Carla Heyl, Shoreview, for amicus curiae, League of Minnesota Cities.

WAHL, Justice.

The Hennepin County District Court, by orders dated May 11, 1992, and May 15, 1992, authorized a closed settlement conference between appellants, County of Hennepin (County) and City of Minneapolis (City), in the underlying case of *State by Archabal v. County of Hennepin*, 495 N.W.2d 416 (Minn.1993) (the Armory lawsuit), then on appeal to this court. Star Tribune, a division of Cowles Media Company, challenged these orders by petitioning for a writ of prohibition. The court of appeals granted the petition for the writ and vacated the May 11, 1992, and May 15, 1992, orders. The issue before this court, on appeal by the County and City,[1] is whether the court-ordered closed settlement conference between public bodies which are opposing parties in a lawsuit is excepted from the requirements of the Open Meeting Law, Minn.Stat. § 471.705 (1992).

This litigation had its genesis in the compelling need of Hennepin County for a new public safety facility and the plans of the County to demolish the National Guard Armory building and construct the new jail on that site. In July 1989, the Military Department of Veterans Affairs, which sold the Armory to the County, and the County brought a declaratory judgment action against the City of Minneapolis to determine the validity of the City's heritage preservation designation for the Armory. In September 1990, Nina Archabal, director of the Minnesota Historical Society and the State Historic Preservation Officer, instituted an action pursuant to the Minnesota Environmental Rights Act (MERA) to temporarily and permanently enjoin the County from destroying or altering the Armory building. The district court entered a temporary restraining order enjoining the County from destroying the Armory.

On March 29, 1991, the district court ordered the County to implead the City of Minneapolis as an indispensable party because of zoning and planning conflicts with the County's proposed use of the Armory site. The court also appointed a special master and counsel for the special master to assist the court, the parties, and "John Q. Public in determining as expeditiously as possible whether the Minneapolis Armory site can be used for a public safety facility." The court later granted the motion for intervention of Cowles Media Company and Lutheran Brotherhood, owners of real estate adjacent to the Armory site, who were concerned that possible rezoning and construction of a jail on the Armory site would affect the development of their property. A number of settlement efforts by the special master were unavailing, including a court ordered settlement conference the first day of trial.

The Armory lawsuit was tried in November 1991, with judgment entered for the County on January 21, 1992. This court granted accelerated review of the appeal on April 13, 1992. Minn.R.Civ.App.P. 118. Thereafter, members of the city council and the City's mayor, meeting with members of the county board and representatives of the district court in the Criminal Justice Coordinating Committee, concluded that a meeting of the council and the board facilitated by Chief Judge Roberta Levy might lead to a settlement of the case. Chief Judge Levy asked members of the city council and their attorneys and members of the county board and their attorneys to attend a meeting in her office at 2:00 p.m. on May 13, 1992, to determine if there were any settlement options that had not been discussed at the official pre-trial settlement conference.

---

1. The State of Minnesota and Cowles Media, et al., are not participating in this appeal.

In an ex parte proceeding, attorneys for the County and City asked Judge Steven Lange, who had tried the Armory lawsuit, to except the meeting from the requirements of the Open Meeting Law, Minn.Stat. § 471.705 (1992), if the statute applied. Counsel for the County informed the court that Judge Levy would be acting as a "private person" at the meeting. The trial court, while not convinced that the proposed settlement conference was subject to the provisions of the Open Meeting Law, found that closure of the proposed conference to the public and the remaining parties [2] would provide an environment conducive to settlement discussion between the City and County which would be in the public interest. The court, by order dated May 11, 1992, specifically excepted the proposed settlement conference and any subsequent conferences of which the court had notice from the requirements of the Open Meeting Law "because the meetings involve sensitive settlement discussions of on-going litigation between public bodies and may implicate the attorney-client privilege." The order required that all excepted conferences be conducted under the auspices of the special master.

The Star Tribune immediately moved for an order vacating the May 11 order. At a hearing on the morning of May 13, 1992, held in response to the emergency request, counsel for the Star Tribune questioned the jurisdiction of the court to issue such an order while the case was on appeal to the state supreme court and, beyond that, invoked the Open Meeting Law because a quorum of the county board would be present at the closed settlement conference. Counsel for the County and City informed the trial court that more than a quorum of the county board and less than a quorum of the city council planned to attend the meeting with Judge Levy that afternoon. The trial court concluded that a meeting of a quorum of the county board is a "meeting" as defined by Minn.Stat. § 471.705, while a meeting of less than a quorum of the city council is not, and that the Open Meeting Law does not specifically authorize public bodies to hold meetings to discuss pending litigation except when

such meetings are "permitted by the attorney-client privilege." As to jurisdiction, the trial court stated that it had specifically retained limited jurisdiction of the case to supervise the demolition of the Armory and concluded that it has inherent limited authority to supervise ongoing settlement discussions, notwithstanding the appeal of a case, when such discussions are in the "public interest." The purpose of the ordered meeting was, in the trial court's words, "to see if there's a way out of this very, very complicated issue of where to venue—where to site this public safety facility." The court denied the motion to vacate the May 11, 1992, order, but stayed that order to give the Star Tribune an opportunity to seek review.

The court of appeals concluded that the Open Meeting Law applied to the proposed meeting since all members of the county board were expected to attend to discuss official business. The court of appeals considered *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth.,* 310 Minn. 313, 251 N.W.2d 620 (1976), on which the County and City relied, but determined that the proposed settlement conference could not be excepted under the attorney-client privilege because its purpose was not to obtain legal advice from counsel and because there would be no need for absolute confidentiality from opposing parties since both parties would attend the conference. The court of appeals then granted the Star Tribune's petition for a writ of prohibition after finding that the trial court had identified no other basis for an exception to the Open Meeting Law and that the City had failed to establish that a settlement conference held after a decision on the merits outside the presence of the trial judge could preserve and improve the fundamental judicial function of deciding cases. *Clerk of Court's Compensation for Lyon County v. Lyon County Comm'rs,* 308 Minn. 172, 180, 241 N.W.2d 781, 786 (1976). This court accepted review.

Our subsequent decision in the Armory lawsuit, holding that the County may not destroy the Armory to construct a public

[2]. Lutheran Brotherhood, Cowles Media, and the State Historic Preservation Office were the parties to be excluded from the closed settlement conference.

safety facility on the site, raises the question of whether the issue presented by this appeal has been rendered moot. *See Izaak Walton League v. State Dept. of Natural Resources,* 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977). The County and the City argue strenuously that, regardless of the outcome of the Armory lawsuit, "[t]he application of the Open Meeting Law, Minn.Stat. § 471.705, to court ordered settlement discussions between litigating political subdivisions of the state is an issue of great public importance which is likely to arise again."[3] We are persuaded that here, as in *Northwest Publications, Inc. v. Anderson,* 259 N.W.2d 254 (Minn.1977), the matter is not moot because it is "one 'capable of repetition, yet evading review * * *'." *Id.* at 257.

■ The issue the parties ask us to determine is whether a court ordered closed settlement conference between two public bodies which are opposing parties in a lawsuit on appeal from a judgment on the merits is excepted from the requirements of the Open Meeting Law, Minn.Stat. § 471.705 (1992).

The Open Meeting Law requires that meetings of public bodies be open to the public. The statute provides, in pertinent part:

> Except as otherwise expressly provided by statute, all meetings, including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, and the governing body of any * * * county, city, town, or other public body * * * shall be open to the public * * *.

Minn.Stat. § 471.705, subd. 1 (1992). The purpose of the statute is threefold: "(1) 'to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning * * * decisions or to detect improper influences;' (2) 'to assure the public's right to be informed;' and (3) 'to afford the public an opportunity to present its views to the [public body].'" *St. Cloud Newspapers, Inc. v. District 742 Community Schs.,* 332 N.W.2d 1, 4 (Minn.1983) (citations omitted). Since the statute was "enacted for the public benefit," the Open Meeting Law is construed in favor of public access. *Id.* The few exceptions that exist are carefully restrained to avoid abuse. *See Minnesota Educ. Ass'n v. Bennett,* 321 N.W.2d 395 (Minn.1982) (labor negotiation strategies); *Annandale Advocate v. City of Annandale,* 435 N.W.2d 24 (1989) (private data under Data Practices Act); *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth.,* 310 Minn. 313, 251 N.W.2d 620 (1976) (attorney-client privilege).

On appeal to this court, neither the County nor the City argues that any of these exceptions, including the attorney-client privilege, applies. Rather, the County urges us to create a new exception to the statute based on public policy favoring settlement conferences. The County cites authority for the proposition that the settlement of litigation, especially between public entities, is an important public policy[4] and cites, as support in this particular matter, Act of April 28, 1990, ch. 592, § 4, 1990 Minn.Laws 2322, 2324 which requires the City and County to meet as part of a planning process for the new jail to avoid litigation over the siting of the facility. The County also argues that a judicially sanctioned settlement conference falls within the inherent powers of the judiciary which cannot be compromised by legislative action. The City acknowledges a conflict between the Open Meeting Law and the inherent power of the judiciary, but contends that the

---

**3.** The City notes that the question of the scope of a district court's power in this regard arises regularly in the state but that in most cases an interlocutory appeal of a court order is too time-consuming and expensive to pursue. Amicus Curiae League of Minnesota Cities advises the court that public officials in the state are genuinely uncertain of their rights and obligations under the Open Meeting Law in the context of litigation. *See* Minn.Stat. § 471.705, subd. 2 (1992) (a civil penalty can be imposed upon elected officials for violation of the Open Meeting Law, along with forfeiture of office for three violations).

**4.** *See Cheyenne River Sioux Tribe v. United States,* 806 F.2d 1046, 1050 (Fed.Cir.1986); *see also* Minn.R.Evid. 408 committee comment ("The increased protection is justified to the extent that it will encourage frank and free discussion to compromise negotiations and avoid the necessity for parties to speak in terms of hypotheticals.").

district court properly exercised its inherent power in this case. The Star Tribune, in opposition, argues that the legislature has the power to require that meetings be open to the public and that, even if the proposed meeting is a judicial function, the trial court cannot deny public access absent a strong showing of a compelling government interest.

In *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth.*, where we recognized the attorney-client exception to the Open Meeting Law, we were dealing with situations where public policy dictates the need for "absolute confidentiality" between a public body and its attorney. 310 Minn. at 324, 251 N.W.2d at 626. There we concluded that, where members of the HRA were involved in active and immediate litigation in their capacity as members of a public agency, absolute confidentiality was required because "[t]he advisory meetings with the attorney were necessary to perhaps attain a settlement ultimately beneficial to the agency * * * and the general public." *Id.* at 323, 251 N.W.2d at 625. While we recognized and applied the exception under those circumstances, we made clear we would not tolerate its application as a barrier against public access to public affairs. *Id.* at 324, 251 N.W.2d at 626. In the case before us, the trial judge has exercised inherent judicial power to help resolve another dispute. The question here is whether this exercise of inherent judicial power, invoking as it does the constitutionally mandated separation of powers,[5] precludes the application of the Open Meeting Law if the court appropriately exercised its inherent judicial power. The answer is yes.

According to the principles we set out in *Lyon County*, courts have inherent judicial power which "grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government."[6] *Clerk of Court's Compensation for Lyon County*, 308 Minn. at 180, 241 N.W.2d at 786. Such power "comprehends all authority necessary to preserve and improve the fundamental judicial function of deciding cases * * * [and] * * * is available to courts on all levels to be used consistent with respective jurisdictions and functions." *Id.* "The courts must confine themselves to their historical and constitutional function of deciding cases. It is in the context of this function that inherent judicial power is necessary and it is in the context of this function that it must be exercised." *Id.* at 182, 241 N.W.2d at 787. "The test is not relative needs or judicial wants, but practical necessity in performing the judicial function." *Id.* at 181, 241 N.W.2d at 786.

The courts of this state have the inherent judicial power to order closed settlement conferences even though public bodies may be parties to the litigation. The ordering of settlement conferences is an intrinsic part of the court's authority and historical and constitutional function of deciding cases because such conferences facilitate resolution of disputes, conserve judicial resources, and allow parties to avoid the burden and expense of protracted litigation. Courts should order settlement conferences, however, only when it is a practical necessity in performing the judicial function of deciding cases, and they must carefully and narrowly limit the scope of such conferences. Where a court, in the exercise of its inherent judicial power, orders a litigating public body into a closed settlement conference as a practical necessity in deciding the case and carefully and narrowly limits the scope of the conference to the issues involved in the litigation, application of the Open Meeting Law would violate the separation of powers under Article III, Section 1 of the Minnesota Constitution.

---

5. "The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1.

6. Regarding inherent judicial power, in *In re Greathouse*, 189 Minn. 51, 55, 248 N.W. 735, 737 (1933), we said, "The judicial power of this court has its origin in the constitution; but when the court came into existence it came with inherent powers. Such power is the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not."

Turning to the case at bar, we cannot find, on the record before us, that the trial court appropriately exercised its inherent judicial power in ordering the closed meeting between these two public bodies which are opposing parties in the underlying lawsuit. To label this meeting a settlement conference is a misnomer. To begin with, not all of the parties to the litigation were included in the closed conference. Consequently, the proposed meeting between the County and City could not have resulted in a resolution or settlement of the underlying lawsuit. Nor was the proposed closed conference to avoid trial of the lawsuit, a well-recognized purpose of settlement conferences, because the order was made after a trial on the merits while the underlying case was on appeal to this court.[7] Finally, the scope of the proposed settlement conference was not narrowly drawn to focus on the specific issues raised by the underlying lawsuit. The issue of "where to site this public safety facility" was broader than the issue of whether the Armory building site could be used for the public safety facility. The trial court must ensure that a closed settlement conference between public bodies is for the purpose of settling the underlying litigation and not to be used as a vehicle to avoid the Open Meeting Law by discussing, in private, issues which properly belong in the public arena.

A court has inherent judicial power to order public bodies in litigation into closed settlement conferences constitutionally precluding the application of the Open Meeting law, but, under the facts and circumstances of this case, the ordered meeting was not a settlement conference and the requirements of the Open Meeting Law apply. We affirm the order of the court of appeals.

Affirmed.

---

7. This is not to say that in all instances the court cannot exercise its inherent power to order a closed settlement conference after trial. Nor is it to say that in this instance the trial court lacked jurisdiction to order a properly constituted, sufficiently limited settlement conference. Rather, it is to say that whether a settlement conference is ordered before, during, or after trial is a factor to be considered in determining the appropriateness of the exercise of inherent judicial power.