401 So.2d 953 (1981)
Honorable Charles A. IMBORNONE
v.
Honorable Thomas A. EARLY, Jr. et al.
No. 81-CA-0388.
Supreme Court of Louisiana.
April 6, 1981.
Dissenting Opinion April 28, 1981.
On Rehearing April 30, 1981.
*954 John T. McCann, Peter A. Winkler, Jr., New Orleans, for plaintiff-appellant.
William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Asst. Atty. Gen., Paul A. Eckert, Staff Atty., New Orleans, for defendants-appellants.
LEMMON, Justice.
This is a suit by Charles Imbornone, the newly elected Judge of Section "A", First City Court of the City of New Orleans, to enjoin the Judges of the Civil District Court for the Parish of Orleans, the Mayor of the City of New Orleans, and the City from taking over the courtroom and chambers used by Section "A" and assigning the use of that space to a judge of the Civil District Court. The trial court, after a hearing, denied injunctive relief and dismissed the suit. Judge Imbornone appealed.[1]

I.
The Civil Courts Building was constructed by and has been maintained by the City *955 of New Orleans. Initially allotted to the First City Court was a portion of the second floor of the building, consisting of three courtrooms with adjoining chambers and offices, the office of the clerk of court, and the office of the constable.[2] At the present time there are still three judges of the First City Court, and prior to the events at issue in these proceedings each of the judges occupied one of the courtrooms and adjoining chambers.
The third and fourth floors were initially allotted to the Civil District Court, with courtrooms and chambers for each of the eight judges on the third floor. A total of four additional judges have since been added to the court, and libraries and offices have been converted into makeshift courtrooms. Furthermore, the recent significant increase in jury trials has made the overcrowding problem intolerable.[3]
For several years the Judges and the Mayor have discussed various solutions to the problem, such as an addition to the building, the construction or renovation of other buildings, the moving of one or more courts, or a combination of these proposals. Every proposal was frustrated because of the City's lack of necessary finances.
Finally, Mayor Morial responded to a request from the Judges of the Civil District Court by offering to authorize them to allot space in the Civil Courts Building. On November 19, 1980, the City's Chief Administrative Officer, acting upon written instructions from the Mayor, wrote a letter authorizing those judges "to assume full responsibility for determining the most effective utilization of the space assigned to courts and offices under the jurisdiction of the Civil District Court Judicial Expense Fund". The City also indicated its intention to retain responsibility for maintaining the building.
Pursuant to that authority the Judges of the Civil District Court, acting en banc, assigned the space on the second floor formerly occupied by Section "A" to Judge Ortigue's use and assigned the space on the third floor formerly occupied by Judge Ortigue to the use of Section "A".[4] This suit followed to enjoin enforcement of that order.

II.
Defendants' exception to the jurisdiction over the subject matter, asserting that jurisdiction vested in the Judiciary Commission, was properly overruled by the trial court. The Judiciary Commission has the power and authority to investigate misconduct by judges and to recommend the discipline or removal of judges. Since no such misconduct was involved in this case, the district court had jurisdiction over the subject matter of this action for injunctive relief.
The trial court also properly overruled defendants' exception of no cause of action based on judicial immunity from suit. The traditional immunity of judges from liability for damages for acts committed in exercise of their jurisdiction has no application to a contest questioning judges' administrative action in allocating space among judges for the exercise of judicial functions.

III.
The critical issue is the legality of the order issued by the Judges en banc.
R.S. 33:4714 A requires the City to provide suitable courtrooms, offices and furnishings for the various courts in Orleans *956 Parish.[5] The executive and administrative powers of the City are vested in the Executive Branch, of which the Mayor is the chief executive officer. Home Rule Charter of the City of New Orleans, Art. IV, §§ 4-101, 4-206. Furthermore, the Department of Property Management (in the Executive Branch) has the responsibility for performing custodial functions and assigning space in buildings owned and operated by the City for a public purpose. Home Rule Charter of the City of New Orleans, Art. V, § 4-1401.
The judges of the courts of Orleans Parish arguably could require the City to furnish suitable courtrooms and offices necessary for the operation of the judicial branch. Furthermore, the judges of the civil courts or Orleans Parish arguably have the inherent power to assume responsibility for the suitable utilization of space within the Civil Courts Building until additional space is provided by the City.
Here, some of the civil judges requested the City's chief executive officer to furnish suitable accommodations, since their present accommodations are not suitable, and the Mayor responded by delegating to those judges (who constitute a majority of the civil judges in the parish), as a measure of interim relief, whatever authority he had to allocate presently available space. The delegation to those judges of any authority the Mayor had to allot space for judicial use does not violate the principle of separation of powers. We therefore conclude that the en banc order of the 12 Judges of the Civil District Court was valid, whether issued under the inherent power of the courts or under the properly delegated authority from the Mayor.
A related issue is whether the Judges of the Civil District Court exercised their authority arbitrarily or capriciously.
Two of the Judges of the First City Court testified as to their own overcrowding problems, which had been compounded by the addition of three arbitrators of small claims. They described the problem of confusion among unrepresented litigants appearing in great numbers and predicted a proliferation of the disorder if one of three sections is moved to another floor.
The trial judge recognized "considerable merit in petitioner's assertions". Nevertheless, the trial judge found "sufficient justification" to support a conclusion that the action taken was not arbitrary. We agree, noting that while other equally reasonable actions may have been taken, the action that was taken cannot reasonably be classified as arbitrary.

IV.
The final issue is whether the disputed order was adopted at a meeting held in violation of R.S. 42:4.1 et seq., providing for open meetings of public bodies.
The Judges of the Civil District Court did allow other judges in the Civil Courts Building to appear at the en banc meeting and present their views, but the portion of the meeting at which the vote was taken was not open to the public. Thus, the threshold question is whether R.S. 42:4.1 et seq. was applicable.
R.S. 42:4.2 provides in pertinent part:
"(1) `Meeting' means the convening of a quorum of a public body to deliberate or act on a matter over which the public body as an entity has supervision, control, jurisdiction, or advisory power.
"(2) `Public body' means village, town, and city governing authorities; parish governing authorities; school boards, and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions;

*957 and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this Paragraph. `Public body' shall not include the legislature."
It is evident from a review of the above statute and of R.S. 42:4.1, which states the purpose of the requirement of open meetings, that the law is not intended to apply to the judiciary.[6] This reasoning applies even when judges are acting in the performance of their rule making or administrative functions.
We therefore conclude that the Legislature did not intend R.S. 42:4.1 through 42:12 to apply to actions of members of the judiciary in the appropriate exercise of their judicial function. The allocation of court space, whether under the delegated authority of the executive branch to solve current overcrowding problems or under the court's inherent power, is an appropriate exercise of judicial function. It is therefore unnecessary to reach the issue of the constitutionality of these statutes.
The judgment of the trial court is amended to delete any reference to the constitutionality of R.S. 42:1 et seq. As amended, the judgment is affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent because I believe (1) the doctrine of inherent judicial powers, which protects the impartiality and independence of the judiciary from legislative or executive interference, cannot be asserted by one lower state court against another; (2) even if the doctrine were applicable, my brethren inadvertently did not apply it in the correct manner; and (3) consequently, the majority also has failed to recognize this Court's duty to exercise its own administrative authority in the case. Since this Court is the only court authorized by our state constitution to exercise administrative authority over another court, the Mayor's attempt to authorize the Civil District Court to exercise administrative authority over the First City Court is unconstitutional, null and void.
The separation of powers by our state constitution establishes an inherent judicial power which the legislative and executive branches cannot abridge. Singer Hutner Levine Seeman & Stuart, etc. v. La. State Bar, 378 So.2d 423 (La.1979); Saucier v. Hayes Dairy Products Co., 373 So.2d 102, 115 (La.1979). See, Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765 (1977). Numerous other state supreme courts have approved the inherent powers doctrine as being necessarily implied by the separation of powers doctrine, which includes the concept of functional differentiation and the concept of checks and balances. Judges for the Third Judicial Circuit v. County of Wayne, 383 Mich. 10, 172 N.W.2d 436 (1969); modified and opinion substituted 386 Mich. 1, 190 N.W.2d 228 (1971); Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 274 A.2d 193, cert. denied 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971). See, Baar, Separate but Subservient, Court Budgeting in the American States, 151-152 (1975); State Courts: A Blueprint for the Future, National Center for State Courts, 144-45 (1978); Brennan, Judicial Fiscal Independence, 23 U.Fla.L.Rev. 277 (1971). The doctrine of inherent powers has been applied in a broad range of cases to both fiscal and non-fiscal needs of courts. See, Cratsley, Inherent Powers of the Courts, The National Judicial College, pt. 3, Inherent Powers Outline, 29 et seq. (1980).
*958 Under a working definition gleaned from the case law, inherent powers consist of all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity and to make its lawful actions effective. Cratsley, Inherent Powers of the Courts, The National Judicial College vi (1980). See also, In re Integration of the Nebraska State Bar Association, 133 Neb. 283, 375 N.W. 265 (1937); Noble County Council v. State, 234 Ind. 172, 125 N.E.2d 709 (1955); Commonwealth ex rel. Carroll v. Tate, supra; Hazard, McNamara and Sentilles, Court Finance and Unitary Budgeting, 81 Yale L.J. 1286, 1287 (1972).
The inherent powers doctrine necessarily is limited in several respects. Since it is based on the separation of powers, which includes the concepts of checks and balances and functional differentiation, it serves primarily to shield the courts' ability to judge independently and fairly from improper interference due to the actions or inactions of executive or legislative officials. Baar, Judicial Activism in State Courts: The Inherent Powers Doctrine, in Inherent Powers of Courts, National Judicial College (1980). Indeed, I have been unable to discover any case in which a state supreme court approved of an application of the doctrine by one lower court against another. Secondly, a court's inherent judicial power includes a measure of administrative authority not unlike that primarily and exclusively vested in the executive department, but only so much as is reasonably necessary to its own judicial function. Cratsley, supra, at vi. Cf. Judges for the Third Judicial Circuit v. County of Wayne, supra, 172 N.W.2d 436, 440 (Mich.1969); modified and opinion substituted 386 Mich. 1, 190 N.W.2d 228 (1971). Otherwise, the notion of inherent powers would swallow up the separation of powers doctrine which it is designed to complement. See, Note, "Protective Orders Against the Press and the Inherent Powers of the Courts," 87 Yale L.J. 342 (1977). Finally, a court should not wander lightly into the field of inherent powers. Because of the risk of negative repercussions, most state supreme courts have placed restrictions on the doctrine. The majority view, and I submit the better view, is that the court asserting its inherent power has the burden of proving that its objective is reasonably necessary to its judicial function. Judges for the Third Judicial Circuit v. County of Wayne, supra; Commonwealth ex rel. Carroll v. Tate, supra; Mathis v. Lovett, 215 So.2d 490 (Fla.App.1968); Matter of Salary of Juvenile Director, 87 Wash.2d 232, 552 P.2d 163 (1976) ("Clear, cogent and convincing proof"); Webster County Board of Supervisors v. Slattery, Chief Judge, 268 N.W.2d 869 (Iowa 1978) (required proof of "immediate [and] necessary" [to the] "efficient and basic functioning of the court").
Other rules of limitation which have been adopted are as follows: Inherent powers may be used by courts only when the established means for fulfilling its needs have been exhausted. State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 P. 392 (1913); In re Clerk of Court's Compensation for Lyon County v. Lyon County Commissioners, 308 Minn. 172, 241 N.W.2d 781 (1976); Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577 (1949); See Annotation, 59 A.L.R.3d 569 at 586. In some states an administrative order of the supreme court requires the judge to obtain approval of the state court administrator before exercising his inherent power to order the expenditure of public funds on the judiciary. Judges for the Third Judicial Circuit v. County of Wayne, supra; O'Coins, Inc. v. Treasurer of the County of Worcester, 362 Mass. 507, 287 N.E.2d 608 (1972); see, Connors, Inherent Powers of the Court: Management Tool or Rhetorical Weapon? 1 Just.Sys.J. 63, 71-72 n. 28. On review, the appellate courts have limited the use of inherent powers when its exercise was found to have been arbitrary. City of North Las Vegas ex rel. Arndt v. Daines, 92 Nev. 292, 550 P.2d 399 (1976); the ordered items were not essential, State v. Superior Court, 2 Ariz.App. 466, 409 P.2d 750 (1976); or a court attempted to create a new court or judicial position. Lake County Council v. Arrendondo, 266 Ind. 318, 363 N.E.2d 218 (1977). Another restraint that *959 courts have placed on the exercise of inherent powers is that such powers can only be used to control activities and persons within the judicial system. Webster Eisenlohr, Inc. v. Calodner, 145 F.2d 316 (3rd Cir. 1944); Birmingham Bar Association v. Phillips, 239 Ala. 650, 196 So. 725 (1940); Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977 (1937). Some of the underlying policy considerations for careful scrutiny of use of inherent powers by a state's highest court and restrictions placed on the doctrine are the dangers of undermining the public's trust in the judiciary, giving the appearance of bypassing the electorate process, overspending the budget, and damaging intergovernmental cooperation. See, State Court Assertion of Power to Determine and Demand Its Own Budget, 120 U.Pa.L.Rev. 1187 (1972).
In the present case, the majority holds that the Civil District Court properly exercised its inherent judicial power in ordering a judge of the First City Court to move from one courtroom to another in a building provided for both courts, contrary to the First City Court's previous decision to assign him to the courtroom from which he was evicted. I believe my brothers have fallen into error for several reasons.
At the threshold, I do not believe that the inherent powers doctrine can be invoked by one lower state court against another in the absence of a specific constitutional authorization. The doctrine's purpose is to protect the independence and impartiality of each judge exercising a judicial function against manipulation by officials of the other two governmental branches. Indeed, Senator Sam Ervin was of the opinion that the separation of powers concept as understood by the founding fathers "assumed that each individual judge would be free from coercion even from his own brethren." Ervin, Separation of Powers: Judicial Independence, 35 Law and Contemporary Problems, 108, 121 (1970). Our state constitution grants only the supreme court and the Chief Justice, subject to rules adopted by the Court, administrative authority over other courts. La.Const. art. 5, § 6. The necessity of stateside, centralized control over the operation of the lower courts was recognized by the 1974 constitution, and the new judiciary article enhances the power of the Supreme Court to exercise administrative control over the entire judicial system of the state. Hargrave, The Judiciary Article of Louisiana Constitution of 1974, 37 La.L.Rev. at 786.
Secondly, since this is not a case of a conflict between branches of government, but merely a dispute between two lower courts under our administrative authority, it is clear that the controversy addresses itself to this Court for resolution administratively. Nor should this Court decide the matter administratively in the present posture without making several preliminary decisions. We should determine whether the form of the action will enable us to reach a fair, just and administratively sound decision without impairing the dignity of the judiciary. Although the trial judge who sat in this case is of the highest caliber and without doubt a fair and impartial jurist, I am now convinced that it was improper of us to have him decide this case while sitting as a member of one of the litigant courts. Moreover, since we are establishing precedent, rather than force any judge to decide such a dispute between colleagues, we could treat the matter as one within our original jurisdiction and have the Judicial Administrator gather evidence and make findings of fact. Our review should be de novo, and our findings and conclusions based on a preponderance of the evidence. The record should be reviewed for the solution most conducive to the administration of justice, not merely to determine if the Civil District Court or our fact finder acted arbitrarily. Since the order in question was issued by one of the parties to the dispute, it should enjoy no presumption of impartiality or validity. Furthermore, although the dispute should be resolved quickly (even if only temporarily), this Court may well conclude that both courts are in urgent need of more courtroom facilities. In such event, this Court has the responsibility to assist both lower courts in obtaining adequate facilities through negotiation, *960 any other avenue available, and ultimately through its own inherent judicial power, if necessary.
Finally, even if the threshold problems could be ignored, the inherent powers doctrine was not applied in a correct manner by the majority. The First City Court's claim to inherent powers is of equal rank and dignity with that of the Civil District Court. Both courts were established by the constitution. See, La.Const. art. 5, §§ 14 et seq., § 32. Both received the same grant of judicial power. La.Const. art. 5, § 1. Both are protected by the separation of powers, from which inherent judicial powers are inferred. La.Const. art. 2, § 2. Presumably, the founders of our constitution sought to provide safeguards for the fair and impartial administration of justice in the First City Court as in all other courts authorized by the judiciary article. Therefore, we may not presume that the Civil District Court's aggressive assertion of the inherent power to reassign courtrooms has any greater validity than the First City Court's defensive reliance on the doctrine. Since the Civil District Court initially asserted the doctrine, and it is the party which seeks to change the status quo, it must bear the burden of proof. Accordingly, it must prove that the proposed reassignment of courtrooms is reasonably necessary to enable it to perform efficiently and properly its judicial function and that the reassignment will not deprive the First City Court of facilities reasonably required to enable it to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective. And the proof must be at least a preponderance of the evidenceone state supreme court has even required a standard of "clear, cogent and convincing proof." Matter of Salary of Juvenile Director, supra.
Our review should be de novo or at least as rigorous as our normal appellate review of facts. All courts which have approved the inherent powers doctrine require a careful appellate review to protect against possible unilateral abuse of the doctrine which would undermine trust in the judiciary, thwart the will of the people or damage intergovernmental cooperation. Moreover, before sustaining the Civil District Court's assertion of inherent powers we must be satisfied that it has exhausted all other available means of fulfilling its needs.
Accordingly, even if the inherent powers doctrine could be invoked in this case, it is clear that the correct burden of proof and standard of appellate review were not applied. Both the majority and the trial judge terminated their inquiries "without deep consideration of the justification and reason for" the courtroom reassignment order after a finding that the Civil District Court's unilateral action in its own self-interest was "not arbitrary." Even so, both conceded that the question of arbitrariness was very close and the majority noted that "other equally reasonable actions may have been taken." Apparently, the majority of this Court did not inquire into the crucial question of whether the proposed reassignment of courtrooms will deprive the First City Court of facilities reasonably necessary to the proper, dignified and efficient performance of its judicial function.
The question of whether the Mayor had the authority to delegate the responsibility of space allocation to the judges of the Civil District Court is irrelevant, in my opinion. Regardless of whether he had the authority to delegate these administrative functions, the Civil District Court did not have the capacity to perform them, because that court has no administrative authority over any other court. The Mayor may provide space and allocate it directly to either court. However, insofar as he sought to authorize the Civil District Court to exercise such unilateral administrative authority over another court within our state, his actions were unconstitutional as impinging upon the exclusive power and authority of this Court to administer the judicial system of the state. La.Const. art. 5, §§ 5 and 6.
I agree with the majority opinion's conclusions as to the inapplicability of the Sunshine Law and judicial immunity. Otherwise, I respectfully dissent.

* * * * * *

*961 ON REHEARING
PER CURIAM.
We granted a rehearing to reconsider that portion of our original opinion which approved of the order of the Civil District Court judges reallocating court space in the Civil Courts Building. After carefully considering the evidence in this case, we conclude that the record provides an adequate basis for the exercise of our inherent judicial power and administrative authority. Exercising that power and authority we find that the most practical stopgap measure for dealing with the overcrowded condition in the Civil Courts Building is for Judge Imbornone and Judge Artique to exchange courtrooms, as set forth in the Civil District Court judge's order. Accordingly, our original opinion and decree are amended to direct such reallocation of courtroom space as an administrative order of this Court. Otherwise, the initial decision herein is affirmed.
AMENDED AND AFFIRMED.
LEMMON, J., concurs and assigns reasons.
NOTES
[1] The trial judge, specially assigned to hear the case, also declared unconstitutional "any prospective application of the Public Meetings Law (R.S. 42:1 et seq.) to the judiciary of this state". The State of Louisiana and the Judges of the Civil District Court filed a direct appeal to this court pursuant to La.Const. 1974, Art. V, § 5(D). Judge Imbornone then also appealed.
[2] The remainder of the second floor was occupied by the Court of Appeal, Fourth Circuit. The Juvenile Court occupied the first floor of the four-story building.
[3] At trial Judge Ortigue, whose courtroom has no jury box and no room for a 12-member jury, testified that he was then in a jury trial that was in its third day. He had been required to borrow a different courtroom for each of the three days of the trial, and he described the confusion and extreme delays caused by the problem.

There are no jury trials in the First City Court.
[4] The judges, in testimony at trial, characterized the order as the most efficient and immediately available interim solution to the space problem.
[5] R.S. 33:4714 A provides:

"A. The city of New Orleans shall provide suitable courtrooms and offices to the various courts of the Parish of Orleans, the criminal and civil sheriffs, the recorder of mortgages and register of conveyances, and the clerks and constables of the city courts."
Furthermore, R.S. 33:4714 C provides:
"C. Courts and officers with judicial expense funds are hereby authorized to assist the city of New Orleans with the repair, renovation or construction of suitable courtrooms and quarters for the proper operation of their respective courts in Orleans Parish."
[6] R.S. 42:4.1 provides:

"It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally."