Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,787-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:
COURTHOUSE SECURITY

* * * * *

Appealed from the
Forty Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. M1064

Honorable Charles Blaylock Adams, Judge

* * * * *

| | |
|---|---|
| KENNETH P. HAINES<br>JODY TODD BENSON | Counsel for 1st Appellant<br>DeSoto Parish Police<br>Jury |
| KENNETH P. HAINES | Counsel for 2nd Appellant<br>Gary V. Evans,<br>District Attorney |

* * * * *

Before MOORE, GARRETT, and STONE, JJ.

**STONE, J.**

This is a dispute between Judge Charles Adams, Chief Judge of the 42nd Judicial District Court ("JDC"), on one side, and the DeSoto Parish district attorney and police jury (collectively, the "appellants"), on the other side. The police jury allegedly owns the 42nd JDC courthouse. The following narrative is taken from the briefs.

The upstairs courtroom in the 42nd JDC courthouse has two entrances. For the last eight years or so, one of the entrances has been secured by the posting of bailiffs there. During that time, the secure entrance has been used as the judges' primary entrance and as the entrance through which criminal defendants in the sheriff's custody are brought into the courtroom. The court's bailiffs occupied two offices near the secure entrance.

Recently, the police jury reallocated these offices to the district attorney's office, which, according to Chief Judge Adams, will use these offices for meetings with witnesses and victims (who do not have security clearance). The police jury relies on La. R.S. 33:4713 and 33:4715 as authority for doing so. In relevant part, La. R.S. 47:13 provides:

> A. Each parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts and such offices, furniture, and equipment as may be needed by the clerks and recorders of the parish for the proper conduct of their offices and shall provide such other offices as may be needed by the sheriffs of these courts and by the tax collectors and assessors of the parish and shall provide the necessary heat and illumination therefor.

La. R.S. 47:15, in full, states:

> The police jury of each parish shall provide a good and sufficient court-house, with rooms for jurors, and a good and sufficient jail, at such place as they may deem most convenient for the parish at large, provided that when the seat of justice is established by law, they shall not have power to remove it.

Chief Judge Adams asserts that this action by the police jury effectively rendered the courtroom entrance unsecured. Pursuant to Uniform Rules for District Courts, Rule 5.2, Chief Judge Adams issued an "Order As to Courthouse Security" that "enjoined" the police jury from: (1) implementing its resolution to remove the court's bailiffs from the aforementioned offices; and (2) re-allocating the probation office space on the west side of the courtroom…without the approval of the Chief Judge."

Rule 5.2 states:

> The sheriff or his or her designated deputy shall provide security for the courtrooms, chambers, judicial offices, and hallways within the courthouse. Security procedures *shall* be *approved* by the chief judge of the District Court or other court. (Emphasis added).

Neither the district attorney nor the police jury filed a petition for injunction or for declaratory relief challenging the subject order. In fact, no pleadings whatsoever were filed in this matter. No hearing was held, no evidence was taken, and no record was created.

The appellants a filed motion for appeal in the district court, which Chief Judge Adams denied. The appellants then filed in this court an application for a writ of mandamus ordering Chief Judge Adams to grant the appeal. We found that the subject order seeks to permanently enjoin the police jury from implementing its resolution reallocating the bailiffs' offices to the district attorney – and therefore constitutes an appealable judgment under La. C.C.P. art. 3612(B). Accordingly, we granted the writ, remanded, and ordered that this matter be perfected as an appeal.

That order has been fulfilled, and the matter is again before us. The appellants have filed a brief. In response, Chief Judge Adams filed in this court a "per curiam," which is in substance an appellate brief. The subject order and the two briefs constitute the entire record on appeal. The

2

appellants' assignment of error is as follows: "The trial court erred…by issuing an injunction, without notice, without a hearing or due process and usurping the power of the police jury to allocate space in the DeSoto Parish courthouse." The appellants argue that the district court lacked jurisdiction to issue the subject order. The grounds for this argument are that a court's jurisdiction extends only to "actions" and "proceedings" before it, and because no action had been filed, the court had no jurisdiction to issue the subject order.

Chief Judge Adams asserts that the subject order is an "administrative order" issued pursuant to his administrative authority under Rule 5.2, *supra* (*i.e.,* rather than civil or criminal jurisdiction). He argues that the proper procedure for the appellants to challenge the subject order is to file an action for declaratory relief.

La. C.C.P. art. 191 provides: "A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law." That article codifies the doctrine of inherent judicial power, which has substantial constitutional underpinnings. The separation of powers by our State Constitution "establishes an inherent judicial power which the legislative and executive branches cannot abridge." *Singer Hutner Levine Seemen & Stewart, etc. v. Louisiana State Bar,* 378 So.2d 423 (La. 1979).

> The inherent powers doctrine necessarily is limited in several respects. Since it is based on the separation of powers, which includes the concepts of checks and balances and functional differentiation, it serves primarily to shield the courts' ability to judge independently and fairly from improper interference due to the actions or inactions of executive or legislative officials…[A] court's inherent judicial power includes a measure of administrative authority not unlike that primarily and exclusively vested in the executive department, but only so much as is reasonably necessary to its own judicial

3

function. (Internal citations omitted).

*Imbornone v. Early*, 401 So. 2d 953, 958 (La. 1981).

The Louisiana Supreme Court decision in *Imbornone, supra,* addressed a dispute over allocation of courthouse space and how the doctrine of inherent judicial power applies in such situation. The events precipitating the Supreme Court's decision in *Imbornone* occurred in New Orleans. The city court and district court shared a courthouse, and there was a shortage of space. The judges of the district court complained about the shortage to the mayor, who delegated whatever authority he may have had to allocate courthouse space to the judges of the district court. Thereupon, the district court judges issued an order for a certain city court judge to exchange courtrooms and related chambers with a certain district court judge. The city judge attacked that order by filing a petition for injunction and declaratory relief in the same district court that had issued the order being challenged in the action.

The district court denied the city judge's petition. The city judge appealed. The Louisiana Supreme Court affirmed, *initially* holding: (1) the district court had the authority to allocate courthouse space pursuant to the doctrine of inherent judicial powers and/or the mayor's delegation of his authority; and (2) the district court's exercise of that authority in ordering the exchange of courtrooms and related chambers was not arbitrary and capricious. However, as explained below, the LASC granted rehearing and again affirmed the mandatory exchange of courtrooms, but on different grounds.

Justice Dennis wrote a cogent dissent from the initial decision wherein he argued: (1) the doctrine of inherent powers does not favor one lower court over another lower court, and therefore, could not be used to validate the

4

district court's action against the city court; (2) while the mayor could allocate space directly to either court, he could not delegate that authority to the district court because such gave the district court administrative authority over the city court. As to the latter, Justice Dennis stated that the mayor's delegation of authority to the district court impinged "upon the exclusive power and authority of…[the LASC]…to administer the judicial system of this state," as granted by La. Const. art. 5, §§ 5 & 6.

"The Supreme Court has general supervisory jurisdiction over all other courts. It may establish procedural and administrative rules not in conflict with law." La. Const. art. 5, §5(A). The chief judge of the Supreme Court "is the chief administrative officer of the judicial system of the State, subject to rules adopted by the court." La. Const. art. 5, §6.

Justice Dennis suggested that the LASC should exercise its constitutional administrative authority in determining the validity of the district court's action, but cautioned:

> Nor should this Court decide the matter administratively in the present posture without making several preliminary decisions. We should determine whether the form of the action will enable us to reach a fair, just and administratively sound decision without impairing the dignity of the judiciary. Although the trial judge who sat in this case is of the highest caliber and without doubt a fair and impartial jurist, I am now convinced that it was improper of us to have him decide this case while sitting as a member of one of the litigant courts.

*Id*. at 959.

After rehearing, the LASC issued a brief per curiam opinion which, in full, stated:

> We granted a rehearing to consider that portion of our original opinion which approved the order of the Civil District Court judges reallocating court space in the Civil Courts Building. After carefully considering the evidence in this case, we conclude that the record provides an adequate basis for the exercise of our inherent judicial

5

> power and administrative authority. Exercising that power and authority we find that the most practical stopgap measure for dealing with the overcrowded condition in the Civil Courts Building is for Judge Imbornone and Judge Artique to exchange courtrooms, as set forth in the Civil District Court judge's order. Accordingly, our original opinion and decree are amended to direct such reallocation of courtroom space as an administrative order of this Court. Otherwise, the initial decision herein is affirmed.

*Imbornone v. Early*, *supra* at 961 (La. 1981). Thus, the LASC adopted the reasoning in Justice Dennis' dissent at least in part.

In promulgating rule 5.2 of Uniform Rules for District Courts, *supra,* the LASC has made clear that it intends for the Chief Judge of a district court to have administrative authority regarding courthouse security measures. In this case, Judge Adams has invoked that authority in issuing the subject order. The propriety of such an order is subject to challenge based on the particular facts of the case. Here, however, there has been no record developed – no evidence, no findings of fact – and thus there is nothing for this court to review. We agree with Chief Judge Adams' argument that the proper means for the appellants to challenge the subject order is for them to file an action for declaratory judgment, whereupon a proper record can be developed.

## CONCLUSION

As the police jury and district have not brought any proceeding in the trial court regarding the "Order As to Courthouse Security," we decline to take any action regarding that order at this point, except that we remand for proceedings consistent with this opinion.

**REMANDED.**