IN RE INTEGRATION OF THE NEBRASKA STATE BAR
ASSOCIATION.
275 N. W. 265

FILED SEPTEMBER 20, 1937.   No. 30179.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and SPEAR, District Judge.

CARTER, J.

This matter comes before the court upon the petition of David A. Fitch and others praying that the bar of the state of Nebraska be integrated by rule of this court. The petition recites that petitioners are a committee of lawyers of the Nebraska State Bar Association appointed to investigate and report concerning the integration of the bar of the state of Nebraska; that the committee made its report to the Nebraska State Bar Association and that it was duly approved by said association; that the report as approved provided for its submission to all members of the bar of the state and for the taking of a referendum by a secret mail vote thereon; that said report has been submitted and the vote taken with the result that 595 members of the bar voted for bar integration by supreme court rule and 155 against; that petitioners feel that a large majority of the members of the bar of this state, as well as informed public opinion, favor bar integration by supreme court rule as a means of providing better service to the public by the legal profession, of effectively combating the unauthorized practice of law, and of improving the ethical standards of the profession and giving to it the high public esteem that it should enjoy.

The presentation of this petition to this court immediately raises the question of the power of the court to proceed in the manner suggested by the petitioners.

Section 1, art. II of the Constitution of Nebraska, provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted." It is clear that this constitutional provision requires that the three departments of government must be kept separate and that each must operate only within its own sphere.

Section 1, art. V of our Constitution, vests the judicial power of the state in this and other courts named therein in the following language: "The judicial power of the state shall be vested in a supreme court, district courts, county courts, justices of the peace, and such other courts inferior to the supreme court as may be created by law; but other courts may be substituted by law for justices of the peace within such districts, and with such additional civil and criminal jurisdiction as may be provided by law."

The Constitution does not, by any express grant, vest the power to define and regulate the practice of law in any of the three departments of government. In the absence of an express grant of this power to any one of the three departments, it must be exercised by the department to which it naturally belongs because "It is a fundamental principle of constitutional law that each department of government, whether federal or state, 'has, without any express grant, the inherent right to accomplish all *objects naturally within the orbit of that department,* not expressly limited by the fact of the existence of a similar power elsewhere or the express limitations in the Constitution.' 1 Andrews' American Law (2d ed.) sec. 182, p. 221." *In Matter of Richards,* 333 Mo. 907, 63 S. W. (2d) 672. And, also, in the case of *State v. Washburn,* 167 Mo. 680, 67 S. W. 592, the Missouri court aptly stated the rule in the following language: "All governmental powers are in their natures either legislative, executive or judicial. The Constitution does not undertake to define what acts fall within the one class or the other, but leaves every act to be classified according to its nature, recognizing that the essentials which distinguish those that belong to one department from those that belong to the two others are discernible to the learned mind. But in that article of the Constitution all the powers of the state government are disposed of, and every one who lawfully exercises any state governmental function is able to trace the source of his authority to one of the three departments there named. The power, whatever its character, can be exercised only by or under authority of the separate magistracy to which by the Constitution it is assigned."

There being no express grant of power in the Constitution to any of the three departments of government to define and regulate the practice of law, the question is—to what department does that power naturally belong?

In the case of *In re Disbarment Proceedings of Newby*, 76 Neb. 482, 107 N. W. 850, this court said:

"Attorneys practicing in the district courts of this state are officers of the courts in which they practice. Their position is an honorable one; they are the trusted advisers of the court. There can be no doubt that the court has ample power to protect itself against dishonorable and corrupt practitioners. * * *

"Our statute contains no provision for disbarment proceeedings. This matter is left to the common-law power and duty of the various courts. It is a principle of general, if not uniform, application that the court which is entrusted with the power and the duty of determining the qualifications for admission to the bar has, by implication, the power and duty also to determine when those qualifications are wanting, and when the privilege of that high calling has been forfeited. This court has the sole power of admission to the bar, and therefore has sole power to annul such admission when sufficient cause appears. Charges of misconduct and deceit in the district court are properly entertained and dealt with in that court. Charges of criminal or immoral conduct calling for disbarment should be addressed to this court." See, also, *State v. Goldman*, 127 Neb. 340, 255 N. W. 32.

In *State v. Barlow*, 131 Neb. 294, 268 N. W. 95, we held that this court was vested with exclusive power to determine the qualifications of persons who may be permitted to practice law in this state, was possessed of the exclusive power to disbar licensed attorneys who have been unfaithful to the trust which the court reposed in them, to define the practice of law and to punish by contempt proceedings persons not licensed to practice law for usurping the privilege of acting as attorneys. See, also, *Rhode Island Bar Ass'n v. Automobile Service Ass'n*, 55 R. I. 122, 179 Atl. 139; *People*

*v. People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901 ; *Fitchette v. Taylor,* 191 Minn. 582, 254 N. W. 910.

In sustaining the Bar Integration Act passed by the legislature of Kentucky, the supreme court of that state said:

"The power to regulate the conduct and qualifications of its officers does not depend upon constitutional or statutory grounds. It is a power which is inherent in this court as a court—appropriate, indeed necessary, to the proper administration of justice. That we have, in deference to the Bar Integration Act (Ky. St. secs. 101-1, 101-2), set up a standing board of commissioners and machinery to conduct and report on investigations concerning the conduct of attorneys, does not alter the fact that we are but exerting an inherent power. * * *

"The argument that this is an arbitrary power which the court is arrogating to itself or accepting from the legislature likewise misconceives the nature of the duty. It has limitations no less real because they are inherent. It is an unpleasant task to sit in judgment upon a brother member of the bar, particularly where, as here, the facts are disputed. It is a grave responsibility, to be assumed only with a determination to uphold the ideals and traditions of an honorable profession and to protect the public from over-reaching and fraud. The very burden of the duty is itself a guaranty that the power will not be misused or prostituted. The power is not made arbitrary merely because it exists in this court as well as in other courts of the Commonwealth. If not an arbitrary power in other courts, it is not arbitrary here." *In re Sparks,* 267 Ky. 93, 101 S. W. (2d) 194. See, also, *Commonwealth v. Harrington,* 266 Ky. 41, 98 S. W. (2d) 53 ; *Clark v. Austin,* 101 S. W. (2d) (Mo.) 977.

The claim of inherent judicial power is no novelty. There are many cases in which it has been invoked over the membership of the bar. It has been invoked in the admission, suspension, discipline and disbarment of attorneys and in these no legislative permission is considered requisite,

and, if a statute exists, it is regarded as declaratory of the inherent power of the judiciary and not exclusive in its provisions. The term "inherent power of the judiciary" means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court. In *In re Disbarment of Greathouse,* 189 Minn. 51, 248 N. W. 735, the court said:

"An attorney is not an officer of the state in a constitutional or statutory sense of that term, but he is an officer of the court, exercising a privilege during good behavior. This privilege is granted by the court in the exercise of judicial power, not as a mere administrative power. * * *

"The judicial power of this court has its origin in the Constitution; but when the court came into existence it came with inherent powers. Such power is the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not. This same power authorizes the making of rules of practice."

It must be borne in mind that attorneys are officers of the court, amenable to it as their superior. This is not on the theory that they are agents in the ordinary sense, but because they sustain that close intimate relationship to the bench which can best be expressed by the phrase "officer of the court."

As a prominent member of the bar of this country has well said:

"Being such appointees, the court has an immediate interest in the character of the bar, for the court's own sake. . A good bar is a necessity for a good bench; and the labors of the latter are lightened and rendered more effective by the learning and ability of the bar, exactly as they are facilitated by efficient receivers, commissioners, referees, masters in chancery, bailiffs or probation officers; all of whom are subject to removal by the court. * * *

"But aside from the mere intellectual aid to be rendered the court by a competent bar, there is the inherent right of the court to surround itself with honest assistants who are sympathetic and will unite with it in the proper adminis-

tration of justice and in maintaining that administration on a high plane. That is the main business of the court; and whatever obstructs or embarrasses its chief function, must be under its control; it cannot practically reside anywhere else." Henry M. Dowling on "The Inherent Power of the Judiciary," 21 American Bar Ass'n Journal, 635.

An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course. The lawyers cannot serve two masters; and the one they have undertaken to serve primarily is the court.

The inherent power of this court which petitioners ask us to invoke has always existed. This power is not subject to delegation to committees and representatives, although these agencies may be utilized for investigation or fact-finding purposes and to make recommendations, but the final decision must rest with the court.

The primary duty of courts is the proper and efficient administration of justice. Attorneys are officers of the court and the authorities holding them to be such are legion. They are in effect an important part of the judicial system of this state. It is their duty honestly and ably to aid the courts in securing an efficient administration of justice. The practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government.

The petition in the matter before us is a request that this court adopt rules providing for the regulation of the bar of this state. In view of the authorities cited, we have come to the conclusion that this court has the inherent power to promulgate rules providing for an integrated bar.

While this court has ample power to provide for an integrated bar by court rule, the question whether the court should invoke that power for the purpose of integrating the bar of the state is a matter within the sound discretion of

the court. The inherent power of the court ought not to be promiscuously used. As was said by Chief Justice Taney in *Ex parte Secombe,* 19 How. (U. S.) 9 : "The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court, as the rights and dignity of the court itself."

That the courts and lawyers have been subjected to public criticism is common knowledge. That a few unethical practitioners have degraded the public esteem of the bar as a whole is a fact well known to every lawyer. The denunciation of the bar by the public is based on the belief that the bar could purge itself if it would, but that it does not wish to do so. In the past, reliance has been placed in the bar associations of the state to accomplish effective corrective results. We have overlooked the fact that the bench and bar are so intimately related that the problems of one are the problems of the other. We have come to the conclusion that the bar, of itself, can do little to better the situation. But, with a cooperating bench and bar, it appears to us that a more effective and efficient regulation of the bar would be the result. Under the plan suggested by the petitioners, it can be accomplished without invoking any power that this court has not already exercised in the past and without the delegation of any of its judicial functions to any agency of the bar. The matter of the admission, suspension, discipline and disbarment of attorneys still rests in this court, and this court alone. In the event of a failure of the plan to function as hoped, it can be corrected or abandoned by the amendment or revocation of the rule by the court in the exercise of its sound judicial discretion. Most courts in the past have shown a reluctance to act that has contributed to the criticism to which the bar has been subjected. We feel that it is our duty, especially where the request comes from so large a majority of the

bar who participated in the referendum on the subject, to consider favorably the adoption of rules providing for the integration of the bar of this state by court rule under the powers lodged in this court by the Constitution of the state. The prayer of the petitioners will therefore be granted.

## RULES CREATING, CONTROLLING AND REGULATING NEBRASKA STATE BAR ASSOCIATION.

For the advancement of the administration of justice according to law, and for the advancement of the honor and dignity of the legal profession, and encouragement of cordial intercourse among the members thereof, for the improvement of the service rendered the public by the Bench and Bar, there is hereby organized, created and formed the Nebraska State Bar Association.

### ARTICLE I.
#### Name

The name of this association shall be Nebraska State Bar Association.

### ARTICLE II.
#### Membership

1. Those persons who, on January 1, 1938, are residents of this State and are licensed to practice law in this State, and those who shall thereafter become licensed to practice law in this State and are residents of this State, shall constitute the membership of the Nebraska State Bar Association.

2. Each member shall, within sixty (60) days from the effective date of these Rules, file with the Secretary of the State Bar Association a statement setting forth his business address and his residence address, and the Judicial District within which his principal office is located. He shall notify the Secretary in writing of any subsequent change in address.

### ARTICLE III.
#### Classes of Membership

1. Members of the State Bar Association shall be di-

vided into two classes; namely, active members and inactive members.

2. The class of active members shall include all members who have not specifically requested to be enrolled as inactive members.

3. Any member who is not engaged actively in the practice of law in this State may, if he so elects, and files written application with the Secretary, be classified as an inactive member. Any inactive member may, on filing application with the Secretary, and on payment of the required dues, become an active member. No inactive member shall practice law, vote, or hold office in the State Bar Association.

## ARTICLE IV.
### Membership Dues

1. The annual dues for active members shall be Five Dollars ($5.00) per year, payable on or before January 1st of each year.

2. Persons admitted to the Bar after January 1st of any year shall, within sixty (60) days after such admission, register with the Secretary of the State Bar Association to be entitled to practice law, but shall not become liable for dues until January 1st following such admission.

3. When any member is in arrears more than two (2) months, the Secretary shall send written notice by registered mail to such member, addressed to his last recorded business address. Any member who shall fail to pay such arrearages within thirty (30) days after the receipt of such notice shall cease to be a member of this Association, and shall not practice law until the arrearages be fully paid.

4. The annual dues for inactive members shall be One Dollar ($1.00) per year, payable on or before January 1st of each year; and if any inactive member shall fail to pay his dues within thirty (30) days after receiving notice of such arrearage, as above provided, his license to practice law shall be suspended, and shall not be reinstated until and unless such arrearages shall have been paid.

## ARTICLE V.
### Officers

1. The officers of this Association shall be a President, three Vice Presidents, all of whom shall be elected at the annual meeting for a term of one (1) year, and a Secretary-Treasurer.

2. In addition thereto there shall be elected nine (9) members of the Executive Council, three (3) of whom shall be known as "Members at Large," and six (6) of whom shall be known as "District Members."

3. The first Executive Council of this Association shall be composed of the members of the Executive Council of the Nebraska State Bar Association, a voluntary association. As the term of office of the Members at Large of such Executive Council shall expire, their successors shall be elected by the Association at its annual meeting, for a term of three (3) years.

4. The District Members shall be elected as follows: There shall be elected one (1) member for each of the six (6) Supreme Court Judicial Districts, as said Districts are now numbered and constituted, or as they hereafter may be constituted. Said members shall be residents of the District which they represent, and shall be elected by the qualified members of the Association residing within such District. Their term of office shall be three (3) years.

5. The District Members shall be elected by a secret mail ballot within the calendar month next succeeding the annual meeting of the Association, in the following manner: The Secretary shall receive nominating petitions until the close of the day next following the conclusion of the annual meeting of the Association. The names of the two members whose petitions contain the largest number of signatures of members qualified to vote shall be placed on a printed ballot, except that every nominee receiving fifteen signatures or more shall be placed upon such ballot, but signatures for more than one candidate shall not be counted. If nominating petitions are not presented to the Secretary within the time prescribed, nominating at least two (2) candidates,

the Executive Council shall nominate additional members so as to place two (2) candidates on the ballot; but, in such case, there shall be nothing to indicate whether a candidate was nominated by petition or by the Executive Council. The ballot shall contain one blank space for writing in any name the voting member may desire.

6. Ballots shall be mailed to every member of the Association within the proper district not later than the 15th day of the calendar month succeeding such annual meeting. The ballots shall be returned to the office of the Secretary not later than the last day of such month, and only the ballots of those members shall be counted who are in good standing, including the payment of their dues for the year next preceding such election. The member receiving the highest number of votes at such secret ballot shall be the duly-elected member of the Council for such district, and shall take office immediately upon his election.

7. The Council shall make necessary rules for the distribution of ballots, for the counting of votes, and for the conduct of elections as shall carry out the true purpose of this section, but such regulations shall not contravene the express provisions hereof.

8. The President shall preside at all meetings of the Association and of the Council, and shall perform the duties usually belonging to such office. He shall also deliver an address at the regular meeting of the Association next succeeding his election.

9. The Vice Presidents, in the order of their election, shall preside at the meetings of the Association in the absence of the President, and perform such other duties as usually pertain to such office.

10. The Clerk of the Supreme Court shall be the Secretary-Treasurer of the Association. The Secretary-Treasurer shall be the custodian of the records and archives of the Association, and shall preserve and record its transactions. He shall collect all dues and other moneys belonging to the Association, and shall send out notices to delinquent members. He shall be the custodian of the moneys of the As-

sociation, which he shall disburse under the authority of the Council upon warrants of the President and Chairman of the Finance Committee, and shall make a report as Treasurer at the annual meeting, and shall receive reasonable compensation for his services.

11. The Executive Council shall consist of the President and the nine members above provided for. In addition to the other duties hereinbefore provided, it shall be the executive organ of the Association, shall provide suitable programs and entertainment at the meetings thereof, recommend by-laws from time to time as they appear to be required, fix the compensation to be allowed any officer, nominate officers, including Members at Large of the Council, to be voted upon by the Association. The Council shall not nominate any one of its membership for any office. In case of any vacancy in its membership, the Council shall have the power to fill such vacancy by appointment until the next regular election as herein provided.

12. Nominations other than those by the Council may be made by any member, but only in writing, filed with the Secretary. In case there are nominees for any office other than those by the Council, election on such office shall be by secret ballot, restricted to members in good standing.

## ARTICLE VI.
### Committees

1. As soon as possible after the regular annual meeting of the Association, the President shall appoint standing committees for the ensuing year, to consist of not fewer than three (3) members each, to wit:

a. A Committee on Legislation.
b. A Committee on Judiciary.
c. A Committee on Legal Education.
d. A Committee on American Citizenship.
e. A Committee on Cooperation with the American Law Institute.
f. A Committee on Unauthorized Practice of the Law.
g. A Committee on Finance.

2. It shall be the duty of the Committee on Legislation to consider and recommend to the Association action concerning proposed legislation and constitutional amendments.

3. It shall be the duty of the Committee on Judiciary to consider and recommend to the Association action concerning the relation between the Bench and the Bar, and the procedure and rules of court.

4. It shall be the duty of the Committee on Legal Education to consider and recommend to the Association action concerning the legal education in public and private institutions in the State of Nebraska, and qualifications for admission to the Bar.

5. The Committee on American Citizenship shall consist of a Chairman to be appointed by the President of the Association; the State member of the General Council of the American Bar Association, as Vice Chairman; the President of the State Bar Association as a Vice Chairman; the Secretary of the State Bar Association, who shall serve as Secretary of the Committee, and in addition thereto one member of this Association from each Congressional District in the State to be appointed by the President of the Association. The Committee so constituted shall function in an executive capacity for a larger committee, to be selected by the committee of ten above named, and to consist of at least one representative from each Judicial District in this State, exclusive of the members of said Executive Committee. This Committee as a whole shall be called together for joint conference at least once each year. It shall be the duty of such committee to use every lawful means to have the Constitution of the United States and of Nebraska, together with the meaning and ideals of good citizenship, taught in all schools, colleges and universities in the State; to further knowledge of the history, institutions, traditions, and form of government of the United States; to cooperate with other civic organizations, including local and national bar associations, and with the press, in the furtherance of a national movement on behalf of a

better and more loyal adherence to American institutions and ideals.

6. The Committee on Cooperation with the American Law Institute shall consist of five (5) members, to be appointed by the President of the Association. One of these members so appointed shall be a member of the Nebraska District Judges' Association. In addition to members appointed by the President, all members of the American Law Institute from Nebraska shall be members *ex officio* of this Committee. The duties of this Committee shall be to cooperate with the American Law Institute in the restatement of the American common law, to give publicity to this work in Nebraska, and to afford the Nebraska Bench and Bar opportunities for information, suggestion and cooperation.

7. The Committee on Unauthorized Practice of the Law shall consist of five (5) or more members, and it shall be its duty to consider and report to the Association on professional encroachment and unauthorized practice of the law.

8. It shall be the duty of the Committee on Finance to audit the books and records of the Secretary-Treasurer at least once each year.

9. Such other committees, standing or special, shall be appointed as are authorized by the Association.

10. The traveling and other expenses incurred by any Committee, standing or special, for meetings of each Committee or otherwise, during the interval between annual meetings of the Association, shall be paid by the Treasurer out of such appropriation as the Executive Council shall have made on application in each case in advance of its expenditure. Such application shall be made in writing by the Chairman of each Committee within sixty (60) days after his appointment and upon a specific budget.

## ARTICLE VII.
### By-Laws

Suitable by-laws not inconsistent with these rules may be provided by a majority vote at a regular meeting.

## ARTICLE VIII.
### Meetings

1. The Association shall have one regular meeting annually at a time and place to be fixed by the Executive Council three (3) months prior to such meeting. Immediately upon the designation of the time and place of such meeting by the Executive Council, each member of the Association shall be notified thereof by the Secretary by mail. If the Council so orders, the proceedings of such meetings may be edited and published in a suitable form by the Secretary-Treasurer, and a copy thereof furnished to each member free of charge.

2. Special meetings of this Association may be held at such times and places as shall be determined by the Executive Council, and the Secretary-Treasurer shall call a special meeting of the State Bar Association upon petition signed by not fewer than twenty (20) of its active members, and such meetings shall be held within thirty (30) days after said petition is filed.

3. A ten-day notice shall be given to all members of a special meeting, and such notice shall include the purposes for such meeting, and no other business than that set forth in such notice may be transacted.

## ARTICLE IX.
### Amendments

Recommendation to the Court of amendments to these rules recommended by a three-fifths (3/5) vote of the Council may be adopted by a majority of the Association present at any regular meeting. Recommendation for amendments not so recommended by the Council must be submitted in writing at a regular meeting, and unless approved by a vote of two-thirds (2/3) of the members of the Association present, shall then lie over and not be acted upon until the next meeting.

## ARTICLE X.
### Rules of Professional Conduct

The ethical standards relating to the practice of law in

this State shall be the canons of Professional Ethics of the American Bar Association, and those which may from time to time be approved by the Supreme Court.

## ARTICLE XI.
### Complaints

1. The Supreme Court shall appoint a committee in each Judicial District consisting of not fewer than three (3) members, and all complaints of professional misconduct shall be made to the committee in the District where the member complained of resides.

2. It shall be the duty of a Committee, upon receiving a complaint of professional misconduct on the part of a member, to make an informal and private investigation of the matter; and upon being satisfied that such complaint is without merit, the Committee shall proceed no further, and shall dismiss same.

3. If, however, a Committee, after making said informal investigation, concludes that there is reasonable ground to believe that the member complained of is guilty of an offense which requires and justifies further action, the Committee shall immediately cause the complaint to be reduced to writing, specifying with particularity the facts which constitute the basis of the complaint, and shall serve a copy of said complaint upon the member complained of; and the member so complained of shall have the right and opportunity to file with the Committee, within twenty (20) days after being served with said copy, any statement, answer, affidavit, or document which he may desire; and said Committee, if it still believes that there is reasonable ground as aforesaid, shall thereupon transmit to the Supreme Court said complaint and the statements, answer, affidavits or documents submitted and filed by the member complained against, together with the Committee's report of investigation. Said Committee shall take final action upon all complaints within ninety (90) days after the same are made. Such complaint shall be made in the name of the State on the relation of the Nebraska State Bar Association.

4. Upon receipt of any complaint forwarded by such Committee, as aforesaid, the Supreme Court may take such action as to it seems just and proper. It may refer said matter to a Special Master to take evidence of and concerning same, upon twenty (20) days' notice as to the time and place of hearing given to the member complained of. Said Special Master, if so appointed, shall have the power and authority to administer oaths and affirmations to witnesses, to subpœna witnesses *duces tecum,* or otherwise; and the said Master shall, upon præcipe filed by the member complained of, subpœna witnesses *duces tecum,* or otherwise, as shall be requested. Said Master shall cause all of the evidence offered and adduced at such hearing to be taken by a reporter and afterwards transcribed to typewriting; and said record, as so made, including all exhibits offered or received, shall be transmitted to the Court with the Special Master's findings and recommendations.

5. In the event the Court deems it necessary, the Court may appoint an attorney to prosecure such action.

6. All expense incurred in connection with such hearings shall be borne by the Association, but shall be first allowed and approved by the Supreme Court.

7. Unless requested by the accused member, neither the hearings, records or proceedings of the Committee, nor those of the Special Master appointed by the Court shall be public, nor shall any publicity be given thereto prior to the filing of the report of the Special Master.

8. In case the Committee aforesaid shall determine that there is no reasonable ground to believe the member complained of guilty of an offense which justifies further action, or in case said Committee fails to act within ninety (90) days after complaint has been made, then the complainant shall have the right to present said matter directly to the Supreme Court by informal complaint filed with the Clerk thereof, supported by affidavits or other *prima facie* evidence; if probable grounds for disciplinary action appear, such complaint may be referred to the Attorney General for prosecution under the present rules of

the Supreme Court, with amendments which may be made thereto. The intention being that the provisions of this article shall be cumulative and not exclusive, but that no complaint shall in any case be filed with the Supreme Court until it shall have first been presented to the proper Committee as herein provided.