**In re William D. ROBINSON, Esq.**

[639 A.2d 1384]

No. 93-533

January 7, 1994. Pursuant to the recommendation of the Professional Conduct Board filed November 8, 1993, and approval thereof, it is hereby ordered that William D. Robinson, Esq., be publicly reprimanded for the reasons set forth in the Board's Notice of Decision attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

This matter came before the Professional Conduct Board on September 30, 1993 by way of a stipulation between bar counsel, Shelley A. Hill, and respondent, William D. Robinson. By this stipulation, respondent waived all of his rights under Administrative Order No. 9, including the right to contest the recommended sanction.

After due consideration of the stipulation, the Professional Conduct Board hereby makes the following findings of fact and conclusions of law. For the reasons stated below, the Board recommends to the Vermont Supreme Court that William D. Robinson be publicly reprimanded.

### FACTS

1. Respondent, William D. Robinson, was admitted to the Vermont bar on October 5, 1971.

2. Mr. Robinson represented Stephen Mullin in a protracted, hotly contested and emotionally charged post-divorce custody matter in which the parties shared custody of two minor boys.

3. On February 24, 1990, Mr. Mullin's ex-wife, Rita Phelps, obtained an ex parte temporary relief from abuse order. She alleged that Mr. Mullin had sexually abused the younger child. The court subsequently held a hearing on the matter. It concluded on March 1, 1990 that the allegations of abuse were unsubstantiated. The court ordered the previous parent-child contact schedule as set forth in the order of divorce to resume. The court ordered Ms.

Phelps to return the children to Mr. Mullin that day for the upcoming weekend. Ms. Phelps was then to have the children with her on the following weekend.

4. Ms. Phelps did not return the children to their father that day, as ordered by the court. She did not do so, according to Ms. Phelps, because when they arrived at the drop-off location, the children were hysterical. She drove around in an attempt to calm them and eventually drove to the Bethel State Police barracks at 8:45 p.m. They told her to take the children home and deliver them to the local Social & Rehabilitation Services office the next morning. No one notified either Mr. Mullin or Mr. Robinson of the whereabouts of the children or of Ms. Phelps' plan. The children were turned over to Mr. Mullin the next morning, March 2, 1990.

5. Throughout the day and evening of March 1, 1990, Mr. Mullin was frantic over the whereabouts of his children. He was concerned that Ms. Phelps had absconded with them. He contacted Mr. Robinson for his advice as to whether or not, if the children were eventually returned, he should turn them over to their mother at the end of his visitation, as required by the divorce order.

6. Mr. Robinson advised his client that, due to the changed circumstances since that morning's hearing—i.e., that Ms. Phelps had not returned the children as ordered—he should not give the boys back to their mother under any circumstances, pending the next custody hearing which was then scheduled for March 20, 1990.

7. Since Mr. Robinson was leaving the country early on March 2, 1990, he dictated a letter to the court detailing the circumstances and informing the court of his advice to his client. He left instructions to his secretary to sign the letter and hand deliver it to the court. That letter states in pertinent part:

> As a result of this situation, I have advised Mr. Mullin that if the children are returned to him, he should not deliver them to his former wife under any circumstances. I realize that this is contrary to your verbal Order from the bench, but the situation has become extremely precarious. I wanted to inform you of my advice to my client so that you would not perceive it as being contemptuous of your Order. I take full responsibility for this position and any action in accordance with it by my client is based solely on my advice. Since the custody hearing is scheduled for March 20, retention of physical custody of the children until that time by their father appears necessary in order to ensure that the mother will not again abscond with them.

8. Mr. Mullin followed his attorney's advice and refused Ms. Phelps access to her children, pending the next court hearing. That hearing was eventually held on April 5, 1990. Mr. Mullin's actions were contrary to the requirements of the court order of March 1, 1990 and the original divorce order. As a result of Mr. Mullin's actions, Ms. Phelps was injured: she was denied contact with her children for four weeks. Ms. Phelps, through her attorneys, filed a motion for contempt against Mr. Mullin. That motion was never addressed by any court.

9. In a separate hearing in this same case on December 6, 1991, Mr. Robinson appeared on behalf of Mr. Mullin, and Ms. Phelps appeared pro

se. Upon Mr. Robinson representing to the court that a new therapist for the older child had been engaged, the court ordered Mr. Mullin to provide information on the therapist's qualifications to the court and to all parties.

10. Mr. Robinson did not submit the required information to the court on behalf of Mr. Mullin, as he never received the information from his client. Mr. Robinson never filed a motion for protective order to relieve his client of the obligation to supply the documents.

11. On January 9, 1992, a status conference was held in this case. The court ordered Mr. Robinson to provide to Ms. Phelps, who was still appearing pro se, all documents concerning the children which he had received from Utah, the state where Mr. Mullin resided. The deadline for production of these documents was January 14, 1992, the date of the next hearing.

12. Mr. Robinson received a copy of an evaluation of the children which had been prepared by the therapist in Utah. While it is not known when Mr. Robinson obtained this report, it is undisputed that he had it by January 9, 1992. Sometime between then and January 14, Mr. Robinson transmitted this report by facsimile to the children's attorney. He did not, however, provide a copy of this report to Ms. Phelps in advance of the January 14, 1992 hearing, as ordered by the court.

13. When asked by the judge about his failure to abide by the order of the court, Mr. Robinson misrepresented that he had received the evaluation only one or two days prior to the January 14, 1992 hearing. This was not true.

14. Ms. Phelps was not prejudiced by Mr. Robinson's failure to provide her the report in advance of the hearing.

## CONCLUSIONS OF LAW

DR 7-106(A) provides that a lawyer shall not disregard, or advise his client to disregard, a standing rule of a tribunal, or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling. Mr. Robinson violated this provision when he advised his client to deny Ms. Phelps access to her children, when he failed to submit to the court information on the new therapist, and when he failed to abide by the court order to provide to Ms. Phelps a copy of the report in advance of the January 14, 1992 court hearing.

DR 7-102(A)(5) prohibits a lawyer from knowingly make a false statement of fact. Mr. Robinson violated this provision when he told the court on January 14, 1992 that he had only received the report a day or two earlier, when he knew he had the report in his possession for at least 5 days.

DR 1-102(A)(5) prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. Mr. Robinson violated this provision by failing to obey the court's order, advising his client to disobey the court order, and misrepresenting facts to the court. This conduct also adversely reflects on Mr. Robinson's fitness to practice law, in violation of DR 1-102(A)(7).

## RECOMMENDED SANCTION

Respondent's misconduct here constituted serious breaches of his ethical duty to the court.

Ms. Phelps' failure to deliver the children to Mr. Mullin on March 1 violated the court's order. However, her illegal actions did not vest Mr. Mullin with the right to disobey the court order as well. While Ms. Phelps' illegal activity may have constituted "changed circumstances,"

respondent's only recourse was to bring those changed circumstances immediately to the attention of the court and to seek a modification of the visitation order. He could have done so on an emergency basis. Mr. Robinson had absolutely no authority to counsel his client to disobey the order. The fact that respondent honestly believed he could ethically give such advice belies a basic misunderstanding of his ethical obligations to the court.

A lawyer has a duty to protect his client's rights and to further the client's lawful interests. However, when those interests conflict with a court order, the lawyer's duty to uphold the law is paramount to the interests of his client.

> An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course. The [lawyer] cannot serve two masters and the one [he has] undertaken to serve primarily is the court.

*In re Integration of Nebraska State Bar Ass'n,* 133 Neb. 283, 289, 275 N.W. 265, 268 (1937).

The Board is mindful that there are few areas in the practice of law more stressful than contested child custody cases. However, family law practitioners must work within the same ethical framework as the rest of the bar.

> Indeed, the need is greater in family matters where the emotional commitment of the parties to the rightness and justice of their cause may lead to the use of self-help, which undercuts the ability of the courts to resolve disputes in a meaningful or effective manner.

*In re Rosenfeld,* 157 Vt. 537, 544, 601 A.2d 972, 976 (1991).

In mitigation, the Board notes that respondent honestly believed he could advise his client to disobey the court order. He advised the court promptly of what he had done and took full responsibility for his actions. Respondent's misconduct was apparently the result of a negligent misunderstanding of his duty to obey the court order in light of changed circumstances. He did not willfully seek to undermine the court.

In aggravation, the Board notes that the injury was substantial. Ms. Phelps was wrongfully denied access to her children for four weeks.

Respondent's subsequent dishonesty to the court is also serious misconduct, the reasons for which are not clearly addressed in the stipulated facts. There was potential for actual injury, although Ms. Phelps was not actually injured.

There are additional mitigating factors present in this case:

> 1. Respondent has been practicing law in Vermont continuously for a period of 21 years and has no prior disciplinary record;
> 2. Respondent cooperated fully with the disciplinary proceedings and accepts full responsibility for his misconduct;
> 3. Although there were repeated instances of misconduct in this particular case, there was no pattern of misconduct in regard to other matters handled by respondent; and
> 4. The disciplinary proceedings in File No. 90.55 have been pending for almost three years.

There are a number of aggravating factors present as well:

> 1. Respondent had a selfish motive when he made misrepresentations to the court; and

2. Respondent has substantial experience in the practice of law.

Three provisions of the ABA Standards for Imposing Lawyer Discipline are relevant here.

Standard 5.13 provides that "[r]eprimand is generally appropriate when a lawyer knowingly engages in ... conduct that involves ... misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

Standard 6.12 provides that "[s]uspension is generally appropriate when a lawyer knows that false statements ... are being submitted to the court ... and takes no remedial action, and causes ... potential injury to a party to the legal proceeding, or causes a[ ] ... potentially adverse effect on the legal proceeding."

Standard 6.22 provides that '[s]uspension is appropriate when a lawyer knowingly violates a court order ... and there is injury ... to a ... party."

While there is an argument to support suspension, the majority of the Board believe that a public reprimand in this case will be sufficient to deter others from similar misconduct and to protect the public from further misconduct by Mr. Robinson. If Mr. Robinson had engaged in similar misconduct in more than one case, if his misrepresentations to the court had caused actual injury to the litigants, or if Mr. Robinson had a record of other violations during his legal career, the Board would not hesitate to recommend a suspension. The Board is satisfied, however, that Mr. Robinson now understands his ethical obligations and is not likely to commit further ethical breaches.

Dissenting Opinion:

I join the majority's decision that respondent violated DR 1-102(A)(5), DR 1-102(A)(7), DR 7-102(A)(5) and DR 7-106(A). I disagree that the appropriate sanction for these violations is a public reprimand. The cumulation of respondent's misconduct, as well as several of the violations in themselves, support a six-month suspension under the ABA Standards for Imposing Lawyer Sanctions.

The critical fact found by the Hearing Panel and accepted by the Board are as follows:

1. *Respondent advised his client to disobey a court order.*

This not only constituted a violation of DR 7-106(A), but it also exposed his client to sanctions for contempt. This latter fact serves to emphasize the seriousness of respondent's violation as well as the potential harm to his client. ABA Standard 6.22 provides that suspension is the appropriate sanction when an attorney "causes interference or potential interference with a legal proceeding." The evidence is undisputed that respondent knew he was advising his client to disobey a court order and therefore interfered with the legal proceeding. Furthermore, he caused substantial harm to Ms. Phelps by denying her any contact with her children for four weeks.

Suspension is also appropriate for this conduct under Standard 7.2 since respondent knowingly engaged in conduct in violation of a duty owed to the profession (counseling a client to act in a way which would subject a client to sanctions for contempt) and caused potential injury to his client. Although no contempt proceeding was brought, respondent placed his client in the position where such a proceeding could have been brought.

2. *Respondent lied to the court when he told the court on January 14, 1992 that he had only received the report of the therapist who evaluated the children a day or two earlier, when he knew he had the report in his possession for at least 5 days.*

Respondent lied in an effort to explain why he had not provided the report to the other side prior to the January 14 hearing. Among the most serious violations, attacking the very roots of our legal system, is making false statements to a court. Standard 6.12 provides that suspension is the appropriate sanction for conduct prejudicial to the administration of justice or involving false statements to the court which cause potential injury or potentially adversely affect the legal proceeding. Although the record does not demonstrate that the opposing party was actually prejudiced or that the proceeding was adversely affected, it is obvious that receiving a critical report, a therapist's report on the children, in connection with a custody hearing at least potentially has the actual or potential adverse affects.

3. *The combination of the above behavior establishes that respondent engaged in conduct prejudicial to the administration of justice and adversely reflects on respondent's fitness to practice law.*

The majority recognized that respondent's actions violated both DR 1-102(A)(5) and (7). The majority correctly observes that Standard 5.13 requires reprimand under the facts of this case for respondent's conduct which adversely reflected on respondent's fitness to practice law. However, to the extent that the respondent engaged in conduct prejudicial to the administration of justice, Standard 7.2 supports the imposition of a suspension.

The ABA Standards identify four factors to consider in imposing a sanction for lawyer misconduct. The preceding discussion has reviewed two of those factors: the duty violated and the actual and potential injuries connected to the violations. The majority noted that "Respond-

ent's misconduct here constituted serious breaches of his ethical duty to the court" and "that the injury was substantial." I believe that even the majority's analysis overwhelmingly demonstrates that those two factors support suspension as the appropriate sanction.

A third factor is the lawyer's mental state. As to both major violations, the respondent acted from a selfish motive in one instance and negligently, at best, in the other. As to one violation, the majority noted that "Respondent had a selfish motive when he made misrepresentations to the court." As to the second, since, as the majority also noted, respondent had "substantial experience in the practice of law," it is fair to infer that he knew the proper procedure for obtaining emergency relief. The failure to take action which he knew was available and appropriate and knowledge that the failure to take the action could expose his client to sanctions for contempt of court are unlikely to have resulted from a positive mental state. Rather, the facts suggest that the respondent was, at a minimum, negligent in respect to advising his client to violate the custody order.

The fourth factor is the existence of aggravating or mitigating factors. The ABA Standards list 13 mitigating factors. The majority relies on only three of those listed factors: no prior disciplinary record, the proceeding has been pending for nearly three years and cooperation with the disciplinary proceedings. The fourth which the majority lists, the absence of a "pattern of misconduct in regard to other matters handled by respondent," is not among those listed in the ABA Standards and is not, I believe, a proper mitigating circumstance. Indeed, in its discussion of this point as a mitigating factor, the majority

actually describes an aggravating factor which it nowhere recognizes as an aggravating factor: "there were repeated instances of misconduct in this particular case." This is an aggravating factor under 9.22(d).

Against what I view as mitigating factors of relatively lesser weight than most of the others in the ABA Standards, there are several, weightier aggravating circumstances. In addition to 9.22(d), the respondent had a selfish motive (9.22(b)); respondent did not acknowledge the wrongful nature of his conduct (9.22(g)); the two victims were a divorced husband and wife engaged in a child custody dispute, two people in an extremely vulnerable state (9.22(h)); and finally, respondent had been admitted to the Vermont bar almost twenty years at the time of the misconduct (9.22(i)).

I would interpret the ABA Standards list of aggravating and mitigating factors to come into play after reaching a conclusion of the appropriate sanction after an analysis of the first three factors. I believe that the first three factors weigh very heavily toward suspension as the appropriate sanction. When I review the mitigating and aggravating circumstances to determine whether a different sanction should be imposed, I would not view the mitigating circumstances to be of such weight as to justify a reduction of the sanction. Quite the contrary seems true. The aggravating circumstances would be substantial enough to increase a public reprimand to a suspension.

The purposes of sanctions are to protect the public and to educate the profession. ABA Standard 1.1. I would find that both these purposes are served by a six-month suspension. I find two factors particularly compelling. First, the respondent exposed his client to a contempt proceeding by advising him to disobey an existing court order. Second, respondent lied to a court. To tell the public and the profession that those two actions deserve a slap on the wrist (and that is what I believe the affect of the public reprimand is likely to appear to the public and the profession), is neither justified by the facts of the case, the ABA Standards or the majority's reasoning.

As a final point, I would emphasize that the fact that respondent's actions took place in the context of a child-custody dispute supports the imposition of a more stringent sanction. Indeed, the majority recognizes that the Supreme Court has indicated that lawyers must be even more careful about their conduct in family matters. *In re Rosenfeld*, 157 Vt. 537, 544, 601 A.2d 972, 976 (1991). At the time that client emotions are most intense, when clients are most vulnerable, the lawyer must act even more carefully in a thoughtful, reflective, ethical manner. The lawyer's role is to facilitate effective, lawful resolution of disputes, not to fuel the clients' fires further or to undercut court rulings. This is the message the Board ought to send to the public and the profession.

For these reasons, I would recommend that respondent receive a six-month suspension.