CINCINNATI BAR ASSOCIATION *v.* NIENABER.

[Cite as *Cincinnati Bar Assn. v. Nienaber* (1997), 80 Ohio St.3d 534.]

*Attorneys at law — Misconduct — Indefinite suspension — Making affirmative representations to courts which were untrue and by silence allowing courts to make unwarranted inferences — Suspended for six months previously.*

(No. 97-874 — Submitted July 7, 1997 — Decided December 31,1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-49.

On June 17, 1996, relator, Cincinnati Bar Association, filed a complaint charging that respondent, Joseph W. Nienaber of Cincinnati, Ohio, Attorney Registration No. 0032085, in representing a criminal defendant in the Hamilton County Municipal Court, violated DR 7-102(A)(5) (knowingly making a false statement of law or fact in the representation of a client), (7) (counseling or assisting a client in conduct that the lawyer knows to be illegal or fraudulent), and 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and (5) (engaging in conduct that is prejudicial to the administration of justice). Respondent filed an answer, and a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on December 12, 1996.

In January 1995 and again in September 1995, Carolyn S. Joyce was cited for driving under the influence. In both cases respondent represented Joyce in the Hamilton County Municipal Court. Because a witness failed to appear, the case on the January citation was dismissed and was later refiled. According to respondent, the trial on the refiled case began on November 8, 1995 before Judge Timothy S. Black and was continued for appearance of a witness.

Both the case on the September citation and the continued case on the January citation were then heard on the same day, December 20, 1995, before two different judges in the Hamilton County Municipal Court. A hearing before Judge Dennis S. Helmick began on the September offense, and Joyce entered a plea of no contest. Prior to sentencing, respondent said to Judge Helmick, "It's obvious my client has a drinking problem and she recognizes that. She hasn't had any trouble since '88." When Judge Helmick, referring to the January 1995 citation, asked, "Why was the '95 DUI charge dismissed?" respondent replied, "WP [want of prosecution], I believe, Judge * * *. The officer didn't show up and the civilian witness didn't show up, Judge." Respondent did not disclose to the court that the case based on the January 1995 citation, previously dismissed, had been refiled, and that trial on the January offense had already begun. Judge Helmick sentenced Joyce on the September 1995 citation as a first offender to the minimum mandatory sentence, three days in jail and participation in the driver intervention program in Cincinnati.

The respondent and Joyce then proceeded to Judge Black's courtroom for the continued trial on the January citation. After a prosecution witness testified, Joyce entered a plea of no contest. When Judge Black asked, "This is charged as a first offense?" respondent replied, "Yes, it is a first offense. She's had three DUIs back in 1980. She got this one in January of '95, and then it was dismissed for want of prosecution, and then it was refiled." The court then asked, "First in five[?]" inquiring whether the case before him was Joyce's first DUI charge within the last five years. Respondent replied, "First within five." Respondent did not tell the court that Joyce had been convicted earlier that morning for the September offense. Judge Black found Joyce guilty on the January 1995 offense and

sentenced her to the minimum sentence for a first offender, three days in jail and probation in the driver intervention program.

At a subsequent hearing on January 3, 1996, Judge Helmick, after having been contacted by the probation department about the anomaly of two first offender sentences, resentenced Joyce on the charge before him as a second offender.

On the basis of these facts the panel concluded that respondent knowingly made false statements to each judge in violation of DR 7-102(A)(5), and that with respect to all of his conduct on December 20, 1995, respondent violated DR 1-102(A)(4) and (5). The panel did not find a violation of DR 7-102(A)(7). After accepting the panel's findings and conclusions, the board recommended that respondent be suspended from the practice of law for two years.

_____

*Thomas M. Tepe, Carolyn A. Taggart* and *Gates T. Richards*, for relator.

*John H. Burlew*, for respondent.

_____

***Per Curiam.*** In *Disciplinary Counsel v. Greene* (1995), 74 Ohio St. 3d 13, 16, 655 N.E.2d 1299, 1301, we said, "It is true that the vigorous and effective representation of a client is the responsibility of all attorneys. This duty, however, does not exist in isolation from the other obligations imposed upon an attorney through our Disciplinary Rules. In addition to the commitment to a client, a lawyer's responsibilities include a devotion to the public good and to the maintenance and improvement of the administration of justice. * * * [T]he attorney's duty, as an officer of the court, is to uphold the legal process and demonstrate respect for the legal system by at all times being truthful with a court and refraining from knowingly making statements of fact or law that are not true."

3

Here, in each case, respondent not only made affirmative representations to the courts which were untrue, but by his silence he allowed each court to make unwarranted inferences. In the case before Judge Helmick, knowing that a continued case on a previously charged DUI would commence within a few minutes, respondent affirmatively stated that his client had not been in trouble since 1988. Also before Judge Helmick, respondent, by his silence, led the court to believe that the January DUI case had been dismissed and not refiled, when, in fact, trial was soon to continue on that January offense before Judge Black. In the case before Judge Black, respondent was asked, "First in five[?]" meaning "Is this the first charge with no convictions during the previous five years?" Knowing that Joyce had been convicted on a DUI charge only minutes earlier, respondent replied, "First within five," thus affirmatively misleading the court. Also, when asked whether "This is charged as a first offense?" respondent told the court, "Yes, this is a first offense." By his silence about the events that had just occurred, respondent misled the court.

Respondent contends that he did not misrepresent the facts to either Judge Helmick or Judge Black. He claims that in Judge Helmick's courtroom he correctly answered that Joyce had not had a DUI conviction in the past five years. Because he was not specifically asked the question, respondent did not believe that he was required to tell the judge that the January citation had been refiled and that a trial on that charge was actually in progress. Respondent claims that in Judge Black's courtroom, he was not asked about convictions within the preceding five years; rather, the judge asked whether the case was "charged as a first offense," and respondent replied in the affirmative, because it was, in fact, "charged" as a first offense. Moreover, having occurred before the September offense, the January offense was, in fact, the first offense in five years.

4

Respondent also claims to have relied on advice he received at an American Bar Association seminar on criminal law that there is no duty for an advocate to disclose his client's record unless specifically asked. Respondent directs our attention to a discussion in ABA/BNA Lawyer's Manual on Professional Conduct 901:102 *et seq.*, wherein various provisions of ABA Comm. on Professional Ethics and Grievances (1953), Formal Op. 287, are discussed. Most pertinent is the lawyer's duty prior to sentencing when the "judge asks the defendant's lawyer whether his client has a criminal record." The ABA's discussion states that "Formal Opinion 287 concluded that * * * the lawyer is [not] permitted to disclose to the court the information he has concerning the client's actual criminal record."

We reject both defenses raised by respondent. First, DR 7-102(A)(5) specifically prohibits a lawyer from making a false statement of law or fact. In Judge Helmick's court respondent made affirmatively false statements. Moreover, by his silence, respondent led both judges to a false appreciation of the situation.

Second, Formal Op. 287, relied upon by respondent, applies only to confidential information obtained from the client. As to the language in the Lawyer's Manual on Professional Conduct cited by respondent, the opinion states, "If the fact of the client's criminal record was learned by the lawyer *without communication, confidential or otherwise, from his client*, or on his behalf, Canon 37 would not be applicable." (Emphasis added.) Formal Op. 287 concludes, "The indignation of the court * * * on learning that the lawyer had deliberately permitted him, where no privileged communication is involved, to rely on what the lawyer knew to be a misapprehension of the true facts, would be something that the lawyer could not appease on the basis of loyalty to the client. No client may demand or expect of his lawyer, in the furtherance of his cause, disloyalty to the law whose minister he is (Canon 32), or 'any manner of fraud or chicane'

5

(Canon 15.)" In this instance respondent's knowledge of the pending cases did not depend upon confidential communications from his client, and Formal Op. 287 does not apply.

We require complete candor with courts. We agree with the Supreme Court of Nebraska, which sixty years ago said, "An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course. The [lawyer] cannot serve two masters; and the one [he has] undertaken to serve primarily is the court." *In re Integration of Nebraska State Bar Assn.* (1937), 133 Neb. 283, 289, 275 N.W. 265, 268.

We are particularly concerned that the instant matter arose on the criminal docket of one of our municipal courts which handles an extremely heavy caseload. Judges, especially those who must process heavy caseloads, must be able to rely on the representations of the attorneys who appear before them.

Section 6.12 of the ABA Standards for Imposing Lawyer Discipline provides, "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." Respondent was previously suspended for six months in *Cincinnati Bar Assn. v. Nienaber* (1994), 68 Ohio St.3d 459, 628 N.E. 2d 1340. On these charges respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.